Merchants' & Manufacturers' National Bank of Pitts- | 158     17|
burgh, Appellant, *v.* Tinker et al.                 | f220    ²632|

*Judgment—Fraud—Conspiracy—Evidence.*

In an action by a creditor against his debtor and another person to whom the debtor has confessed judgment, to recover damages for the loss of the debt caused by an alleged conspiracy between the defendants, the evidence of collusion need not be conclusive, but it must do more than merely raise a suspicion; it must lead to a belief.

In such a case the plaintiff offered evidence which tended to show that six of the notes upon which judgment was confessed presented about the same appearance when they were taken to the prothonotary, and in the opinion of expert witnesses had been written about the same time.' It also appeared that the defendant to whom the judgment had been confessed had stated in his return to the assessor that he had no money at interest due him from solvent debtors. On the part of the defendants, checks and bank books were offered showing loans or advances sufficient to support the judgments, and both defendants testified that such loans or advances had been made. This evidence satisfied the trial judge that the judgments were bona fide. *Held,* that under such circumstances it was proper to withdraw the question from the jury.

Argued Oct. 2, 1893. Appeal, No. 162, Oct. T., 1892, by plaintiffs, from judgment of C. P. Venango Co., Nov. T., 1888, No. 76, on verdict for defendants, H. G. Tinker and J. A. Ritchey. Before STERRETT, C. J., GREEN, WILLIAMS, Mc-COLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Trespass for conspiracy.

At the trial, before ARCHBALD, P. J., of the 45th judicial district, specially presiding, plaintiff offered in evidence a record of fourteen judgments all entered on Oct. 17, 1887, on judgment notes signed by H. G. Tinker in favor of J. A. Ritchey. The notes were of various amounts, and bore different dates from July 31, 1880, to Sept. 17, 1887. At the time the judgments were entered Tinker was a debtor of plaintiff for over $6,000. The evidence relating to the alleged collusion between Tinker and Ritchey is stated in the opinion of the Supreme Court.

Binding instruction was given for defendants.

Verdict and judgment for defendants. Plaintiff appealed.

*Error assigned* was above instruction, quoting it.

*J. H. Osmer* and *Isaac Ash, A. R. Osmer* and *P. M. Speer*
with them, for appellant, cited: Snyder & Jacoby v. Berger,
18 W. N. 490 ; Lowe v. Dalrymple, 117 Pa. 564; Montgomery
Web Co. v. Dienelt, 133 Pa. 585 ; Kaine v. Weigley, 22 Pa. 179.

*C. Heydrick, Lee & Criswell* and *James Denton Hancock* with
him, for appellees, cited : Mead v. Conroe, 113 Pa. 223 ; Morton
v. Weaver, 99 Pa. 52 ; Glass Co. v. Storms, 125 Pa. 268 ; Ott
v. Oyer, 106 Pa. 7 ; Spencer v. Colt, 89 Pa. 314 ; Cullmans v.
Lindsay, 114 Pa. 166 ; Blakley's Ap., 7 Pa. 449 ; Breading v.
Boggs, 20 Pa. 37 ; Mellon's Ap., 1 Grant, 212 ; York Co. Bank
v. Carter, 38 Pa. 446 ; Walker v. Marine Bank of Erie, 98 Pa.
574 ; Fulton v. Hood, 34 Pa. 365 ; Burkholder v. Plank, 69
Pa. 225 ; Aumick v. Mitchell, 82 Pa. 211 ; Foster v. Collner,
107 Pa. 313 ; Ballentine v. White, 77 Pa. 20 ; Travis v. Brown,
43 Pa. 9 ; Reese v. Reese, 90 Pa. 94 ; Collins v. Cronin, 117
Pa. 45 ; Rundell v. Kalbfus, 125 Pa. 123 ; Fauen v. Fruit Co.,
22 W. N. 157 ; Lowe v. Dalrymple, 117 Pa. 564; Paving Co.
v. Bickel, 37 Leg. Int. 132 ; Hiene v. Com., 91 Pa. 145.

OPINION BY MR. JUSTICE WILLIAMS, October 30, 1893 :

The plaintiff was a creditor of Tinker, having discounted his
paper for over six thousand dollars.   Before this paper had all
matured, Ritchey, who held the notes of Tinker for a much
larger amount, caused judgments to be entered against him and
executions to be issued, on which his property, real and personal,
was sold ; and the proceeds were wholly absorbed by prior liens
and Ritchey's judgments.   The bank alleged that these judg-
ments were fraudulently confessed, and that its debtor's prop-
erty had been placed beyond its reach by a conspiracy between
the defendants in this action to defeat the collection by it of
its just claims.   The bank sought therefore to recover the
amount of its demands against Ritchey and Tinker, as damages
sustained by it in consequence of the alleged conspiracy.   Its
right to recover depended not on the fact that it was a creditor
of Tinker, but on the allegation that, being a creditor, it had
been defrauded, and the collection of its debt defeated, by the
fraudulent conspiracy which it charged.   The burden of proof
was on the plaintiff.   It was not enough to show falsehood and
fraud in Tinker in procuring the discount of his notes by the

bank. It was necessary to go further and place before the jury facts from which they might fairly find that the notes held by Ritchey did not represent an honest indebtedness, but were made and used for the fraudulent purpose asserted. For this purpose some evidence was given to show that six of the notes presented about the same appearance when they were taken to the prothonotary, and in the opinion of the expert witnesses had been written at about the same time. It also appeared that Ritchey had stated in his return to the assessor that he had no money at interest due him from solvent debtors. This was a very slight foundation for a verdict in support of the plaintiff's allegations, but, considered in the light of the evidence given by the defendants to show the existence of the indebtedness, it lost significance. The proof of the existence of the loans or advances by Ritchey was made not only by the testimony of the two defendants, but by the production of checks and bank books that amounted in the mind of the trial judge to a demonstration of the honesty of the transactions. He said when he withdrew the case from the jury: " I frankly say that if I had submitted this case to the jury, and the verdict had been found in favor of the plaintiff I would have been compelled under the evidence which has been brought here, to set aside that verdict, just as Judge TAYLOR did in the former case, and allow the case again to go to a jury." Such being the effect of the evidence on the mind of the judge, he did right in acting upon his judicial conscience and withdrawing the case from the jury. The question raised on appeal from such a judgment is, ought the case to have been submitted to the jury ? It is true that the evidence of collusion need not be conclusive, as was held in Lowe v. Dalrymple et al., 117 Pa. 564, but it must do more than raise a suspicion, Mead v. Conroe, 113 Pa. 223 ; it must lead to a belief. Upon a careful examination of the testimony and the exhibits we cannot say that the learned judge reached a wrong conclusion as to their effect, nor that there was evidence before the jury on which a verdict in favor of the plaintiff should have been sustained.

The judgment is therefore affirmed.