# McElroy *v.* Harnack, Appellant.

*Conspiracy—Trespass—Fraud—Joint tort feasors.*

In an action of trespass to recover damages for losses alleged to have been caused by a conspiracy among the four defendants, a verdict and judgment will not be set aside as against two of the defendants who were stockbrokers, where it appears that the brokers with one of the other defendants organized a corporation, issued bonds of the company in an amount thirty times the value of its property, and that the brokers by washed or fictitious sales on the stock exchange gave the bonds a high market value, and thus enabled the other two defendants to borrow large amounts of money thereon from the plaintiffs.

Argued Oct. 26, 1905. Appeal, No. 104, Oct. T., 1905, by defendants, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1904, No. 205, on verdict for plaintiffs in case of T. C. McElroy et al., trading as McElroy & Boyle, v. Albert J. Harnack et al. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass for conspiracy.   Before McClung, J.

The facts appear by the opinion of the Supreme Court.

Defendants presented the following points :

5. That there is no evidence in the case sufficient to sustain the allegations of the plaintiffs that the four defendants in this case conspired together to give a fictitious value to the bonds of the United States Fireproofing Association by fictitious sales and purchases on the floor of the Pittsburg Stock Exchange. *Answer :* This is refused.  [1]

7. That if the jury find that the purposes of the defendants, Harnack and Gartner, in the organization of the United States Fireproofing Association, and in accepting the issuing of the bonds in said corporation, was to enable them by the sale or use of the said bonds to raise funds to improve the properties conveyed by Harnack to said corporation, and to acquire other properties and enlarge the business of the said corporation so that the said corporation should be enabled to do business as a manufacturing corporation, such conduct cannot be held to be actionable as a conspiracy by the plaintiffs under the evidence in this case.   *Answer :* This is affirmed ; but, of course, an honest purpose in organizing the corporation will not protect them from responsibility for subsequent fraudulent use of its securities, if you find the fact as to such use against them.  [2]

9. That there is no natural or probable connection between the acts of Harnack and Gartner with reference to the issuing of the bonds of the United States Fireproofing Association, and the pledging of such bonds by Hamilton and Powelson in personal, private stock speculations.   *Answer :* This is affirmed. You, of course, take that affirmance in the light of the general charge suggesting how many of these things might throw light on other evidence in the case, although they themselves do not contain sufficient evidence to charge the parties with responsibility.  [3]

12. That the plaintiffs' statement throughout alleges a joint tort in every particular participated in at every stage by all of the defendants ; and unless the jury find that these allegations are true, there can be no recovery in this case.  [4]  *Answer :* This means that you can find against all of the defendants or against none of them, even if you are convinced that some of them are liable.  I refuse this.  I have explained in the

general charge the principles that govern in matters of that sort.

13. That under all the evidence in the case the verdict must be for the defendants Harnack and Gartner. *Answer :* Refused. [5]

Verdict and judgment for plaintiffs for $3,816. Defendants appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*J. S. Ferguson*, with him *E. G. Ferguson*, for appellants.— Where in an action of trespass a joint tort is alleged it must be proved, and if the proof is only of a tort of one defendant or of two separate torts by different defendants, the action cannot be sustained against any of them : Minnich v. Lancaster, etc., Electric Ry. Co., 203 Pa. 632; Goodman v. Coal Twp., 206 Pa. 621; Wiest v. Electric Traction Co., 200 Pa. 148; Rowland v. Philadelphia, 202 Pa. 50 ; Dutton v. Lansdowne Boro., 198 Pa. 563.

The evidence must be full, clear and satisfactory to establish a fraudulent conspiracy in a civil suit for damages : Biever v. Herr, 1 Pearson, 510; Bradley v. Fuller, 118 Mass. 239; Barber v. Lesiter, 29 L. J. C. P. 161.

*D. F. Patterson*, with him *A. M. Imbrie*, for appellees, cited : Laverty v. Vanarsdale, 65 Pa. 507.

OPINION BY MR. JUSTICE MESTREZAT, January 2, 1906 :

In a charge exceptionally clear as well as comprehensive and to which no error is assigned, the learned judge submitted this case to the jury and they found a verdict against all four of the defendants. Two of the defendants, Harnack and Gartner, have appealed, and they assign as error the answer of the court to certain of their points for instruction. The questions raised by the assignments were anticipated and correctly answered in the charge and need no extended discussion here. The verdict is supported by an abundance of evidence, none of which is claimed to have been improperly admitted.

There was but a single question in the case and it was one of fact. The action was trespass for a conspiracy by which

the plaintiffs allege they were defrauded by the action of the defendants in creating and maintaining fictitious values of, or a false market for, the bonds of a New Jersey corporation, known as the United States Fireproofing Corporation. The plaintiff's claim that relying upon the fictitious values of the stock, fraudulently created by the defendants, they were induced from time to time from April 1, 1902, to March 1, 1903, on the security of these bonds at par, to advance money in large amounts aggregating at the last named date a balance of $9,435.48. The court, after telling the jury that the plaintiffs must sustain their allegation of fraud by evidence that was full, clear and satisfactory, said : " As I have said, the burden is upon the plaintiff to convince you by the preponderance of evidence and to the degree I have stated, as to every element of his case, to convince you that a fraud was perpetrated upon him, to convince you that these defendants, or so many of them as you may find liable, were concerned in that fraud, and to convince you that he suffered financial damage as the direct result of that fraud, or the approximate result, as the legal expression is."

A résumé of the more important facts will conclusively show that the two appellants were participants in the fraudulent transaction from its inception, and continued in it until they and the other two defendants were detected and exposed. About the middle of January, 1902, Harnack, Gartner and Hamilton, three of the defendants, purchased certain real estate in Ohio which was conveyed to Harnack, the consideration being $15,000 in cash and the assumption of a mortgage indebtedness against the property of about $25,000. Within a week, these parties obtained a charter in New Jersey for the United States Fireproofing Corporation with an authorized capital of $1,250,000, the par value of the stock being $100 per share. On February 15, Harnack conveyed the property to the company, the consideration named in the deed being " $1.00 and other good and valuable considerations." Notwithstanding the mortgage incumbrance of $25,000 on the property, Harnack conveyed it to the company with a covenant " that the title so conveyed is clear, free and unencumbered." On the same day the corporation gave a mortgage on this property to the Guaranty Trust Company of New York to secure $500,000 of " first

mortgage, six per cent. sinking fund gold bonds." These bonds were at once turned over to a firm of stockbrokers, E. D. Gartner & Company, composed of the appellants, E. D. Gartner and A. J. Harnack. On March 6, the entire capital stock of the corporation was issued to A. J. Harnack. The result of the efforts of the appellants up to this date, and within two months of the inception of their scheme, was a purchase of a tract of Ohio real estate for $15,000 subject to a $25,000 mortgage, the incorporation of a New Jersey corporation with an authorized capital stock of $1,250,000, the transfer to this corporation of the real estate, the issuing of $500,000 of bonds secured by a second mortgage on the real estate, and the delivery to Gartner and Harnack of the entire bond issue and to Harnack of all the authorized capital stock.

Subsequently, bonds of the par value of about $100,000 were delivered to Hamilton by one of the appellants and their firm retained the balance of the issue. The first sale of the bonds on the Pittsburg Stock Exchange took place on April 19, 1902. From that date until December, 1902, bonds of the par value of $74,000 were sold and bought on the exchange at prices ranging from $95.00 to $105, and then dropping to $50.00. Gartner & Company purchased bonds of the par value of $1,000 and sold $22,000, $18,000 of which went to Powelson who also purchased $21,000 of Hamilton and sold to him $18,000 of the bonds. In all the transactions in the sale and purchase of these bonds on the exchange, except one, the defendants or some of them were sellers or purchasers or both.

Hamilton was the general manager of the United States Fireproofing Corporation and Powelson was a clerk in the National Bank of Western Pennsylvania. Five days after the first sale of bonds on the exchange, Hamilton obtained from the National Bank of Western Pennsylvania the discount of a note on three of the bonds as collateral, and continued to use the bonds as collateral until September 16, 1902, when the bank had $26,000 of the bonds to secure a loan of $15,000. Powelson deposited four of the bonds with the bank to secure a loan of $2,000 on April 23, 1902, the day preceding Hamilton's first loan, and he continued to obtain further loans from the bank until he had pledged $39,000 of the bonds as collateral. After the bonds of the corporation ceased to have a market

value, in January, 1903, the loans of the bank to Hamilton and Powelson were consolidated and guaranteed by E. D. Gartner & Company. About the same time, Gartner & Company secured a loan of $15,000 by depositing with the bank $200,000 of the bonds. Subsequently, all these loans were paid by Gartner & Company, to whom all the pledged bonds were returned. The president of the bank testified that in the fall of 1902, Powelson told him that he and Hamilton " traded quotations ; made quotations on the bonds ; they would get one broker to buy the bonds, and another broker to sell them at a price of par or over, which indicated that the bonds had a market value, and which trades were not real trades." ·

Harnack and Gartner were members of the Pittsburg Stock Exchange and, of course, were familiar with its daily transactions. They, therefore, knew of each day's sales and purchases of the Fireproofing corporation bonds made by themselves and the other defendants and the fictitious and highly inflated values which their action gave the bonds. They also knew, what was shown by the testimony, that no money whatever went into the treasury of the corporation from sales of the stock or the bonds. They issued the bonds, put them on the market at the stock exchange and sold, as well as purchased, some at par which they knew to be more than thirty times their real value. In doing so, they gave the bonds a value which they knew they did not possess and their action was a fraud on innocent purchasers and others who were induced to accept the bonds at their inflated values. As said by the learned judge in his charge : " The party who furnishes the bonds with the understanding that they shall be used fraudulently is just as much a party to the conspiracy as those who actively carry it out to its end."

Further discussion of the case is unnecessary. As said in the opinion refusing a new trial: " the less discussion of these matters by the court the better for the defendants." It was the fictitious values given the bonds by the preconcerted action of the four defendants which injured the plaintiffs and constitutes the tort for which this action was brought.

The judgment is affirmed.