## Ballantine, Appellant, *v.* Cummings.

*Conspiracy—Fraud—Evidence—Burden of proof.*

Conspiracy is a combination or agreement between two or more persons to do an unlawful thing, or to do a lawful thing in an unlawful manner.

In an action of trespass for damages claimed to have been suffered by reason of an alleged conspiracy fraudulently and maliciously entered into by defendants to cheat and defraud the public in general, and the plaintiff in particular, in order to sustain a recovery, the burden is on the plaintiff to prove by sufficient testimony that such a conspiracy was entered into in the first place, and that as a result of the fraudulent acts done and false statements made for the purpose of furthering the schemes to defraud, he was injured.

A conspiracy to defraud on the part of two or more persons means a common purpose supported by a concerted action to defraud, that each has the intent to do it, and that it is common to each of them, and that each understands that the other has that purpose.

A conspiracy may be proven either by direct and positive testimony showing that a collusive agreement had been entered into to do an unlawful thing, or by acts and circumstances sufficient to warrant an inference that the unlawful combination had been in point of fact formed for the fraudulent purpose charged, and when circumstantial evidence is relied on to prove the conspiracy its sufficiency must first be determined by the court.

In a suit alleging conspiracy between two or more persons the foundation of the action is the unlawful combination. Failure to prove the unlawful combination defeats the right to recover. The unlawful combination, like any other substantive fact, must be established by sufficient relevant testimony.

When testimony is not direct and positive, but where subsequent acts and circumstances are relied on to establish the conspiracy, the first duty rests with the court to say whether the proven acts and circumstances, even if believed, are sufficient in law to establish in point of fact that the unlawful combination had been entered into by the parties charged or two or more of them at some prior date. If the subsequent acts do not show, or tend to show, the prior unlawful combination

and purpose, the plaintiff has failed to make out his case and it is the duty of the court to say so.

When conspiracy is alleged it must be proven by full, clear and satisfactory evidence.

While it is permissible to prove subsequent acts from which the conspiracy itself may be inferred, when such acts are relied on to establish the conspiracy they must be such as to clearly indicate the prior collusive combination and fraudulent purpose, not slight circumstances of suspicion upon which a jury might guess or conjecture as to the fact of such unlawful combination ever having been entered into, but they must be such as to warrant the belief and justify the conclusion that the subsequent acts were done in furtherance of the unlawful combination and in pursuance of the scheme to defraud. The subsequent acts must negative the idea of a lawful undertaking or purpose, and must tend to show the prior unlawful combination.

A conspiracy must be proven by substantive facts, not by disconnected circumstances, any one of which, or all of which are more consistent, or just as consistent, with a lawful purpose as with an unlawful undertaking.

Where the conspiracy charged was a fraudulent combination by which the plaintiff was induced to invest in the preferred stock of a corporation at a price in excess of its real value, evidence as to the sale of the common stock of the corporation by the defendants on the stock exchange is inadmissible where there is no offer to show that the sales of common stock affected the value of the preferred stock, or that it was part of a conspiracy to cheat and defraud, or that when the preferred stock was purchased the price paid for the same did not represent its then market value, or that the plaintiff relied on the quotation of the common stock when he purchased the preferred shares at private sale.

Argued April 2, 1908. Appeal, No. 31, Jan. T., 1908, by plaintiff, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1900, No. 130, on verdict for defendants in case of Charles M. Ballantine v. George K. Cummings et al. Before MITCHELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass for conspiracy. Before MAGILL, J.

At the trial when plaintiff was on the stand he was asked this question :

Mr. Bracken : " Q. Had you any knowledge, prior to your purchase in March, 1899, of the listing of the common stock of the company upon the Philadelphia Stock Exchange ? "

Mr. Graham : The only stock involved here is preferred

stock.  I object to any evidence of the listing of the common stock.  It is not in issue, and the preferred stock was not a listed stock at the time of the purchase of this stock, nor for six months afterwards.

The Court : I will sustain the objection at this stage of the case.  Exception. [1]

J. Bell Austin was examined as follows :

" Q. What is your business ?  A. Secretary and treasurer of the Philadelphia Stock Exchange.  Q. Did you hold that position in January, 1899 ?  A. Yes, sir.  Q. What is the Philadelphia Stock Exchange ?  A. A place where stocks and bonds are bought and sold.  Q. I mean in respect to its membership.  It is an organization, isn't it, of brokers for the sale and purchase of stocks and bonds ?  A. Yes, sir.  Q. Have you with you any papers that were filed with the Philadelphia Stock Exchange by the Daylight Prism Company ?  A. I think so, yes.  Q. Will you please produce them.  (Witness produces papers.)  Q. One of the papers you produced is entitled at the head, Philadelphia Stock Exchange, stock application for the listing of stock dated August 1, 1899 ?  A. Yes, sir.  Q. Have you an application of an earlier date ?  A. That is preferred stock, isn't it ? "

Mr. Graham : Yes.

" A. Yes, that is for the common stock.  Q. You also produce an application dated January 13, 1899, for the listing of the common stock ?  A. The common stock ?  Q. On the Philadelphia Stock Exchange.  Was that delivered to you on or about that date ? "

Mr. Graham : I object to all inquiries relating to the listing and sale of common stock.

The Court : I cannot view this offer of the listing of this common stock as material to this issue.  I sustain Mr. Graham's objection.  Exception. [2]

Mr. Bracken : I offer to prove from the record made by the witness of the daily sales in the Stock Exchange of common stock made during the period from the listing, January, 1899, down to the date of purchase of the plaintiff's stock, to be followed by evidence that those sales correspond with sales made by brokers for G. K. and J. E. Cummings, the defendants, one to the other.

Objected to as irrelevant and immaterial, and not pertinent to the issue.

Objection sustained.  Exception. [3]

Patrick Henry was examined as follows:

Mr. Bracken : " Q. Are the books you have produced here kept under your supervision ? A. Yes, sir. Q. And have you several bookkeepers who make the entries from time to time ? A. Yes, sir. Q. Have you an account in one of these books with either J. E. or G. K. Cummings ? "

Objected to.

The Court : As to the entries in these books which the witness produces, he is not competent to testify, but the real question I suppose is that which will follow, namely, were there transactions between DeHaven and Townsend as brokers, and G. K. Cummings and J. E. Cummings in common stock of this company during a certain period ; is that right?

Mr. Bracken : That is undoubtedly what I propose to do, to prove just what the dealings were in common stock during the period in question on the part of one or the other of the defendants through DeHaven and Townsend as their broker or as his broker.

The Court : Then any technical question to the books themselves is not pressed at this time.

Mr. Graham : I feel that it is impossible for this witness to prove anything of that nature. In the first place your honor would not admit evidence of dealings coming from books of other people as against us, against the defendants in this case, and if he wants to prove transactions he would have to go and prove the identity of the man and the transaction, too, before it would be admissible in evidence here, but I will not press the technical objection, which I am sure is one that could not be surmounted, but meet the evidence on its merits, the question of whether this is admissible testimony, even if he had established proof of these sales.

Mr. Bracken : I don't know any better proof under the law than entries made in books of brokers, made in the due course of business, where you prove the entries. Probably you must call the people who made the entries, but having done that the books are competent evidence in any controversy of this sort. They are not evidence in favor of the person who made the

entries as against the defendant, but in a controversy as between third persons, books made up in due course of business and properly proved and authenticated have always been held to be good evidence of the facts that they show.

The Court : The objection to the offer of the sales of common stock during this period with which the defendants had to do is sustained.   Exception. [4]

Hugo H. Ditman was examined as follows :

Mr. Bracken : I offer to prove by this witness, who was the bookkeeper and connected with Gillman and Finninger, brokers on the Stock Exchange in 1899, that between the dates of the listing of the common stock of the Daylight Prism Company and the date of the purchase of the preferred stock by the plaintiff, Gillman and Finninger both bought and sold large amounts of common stock on behalf of Mr. George K. Cummings and Mr. J. E. Cummings, and that sales were made on certain dates by one to the other.

Objected to on the ground formerly stated.

Objection sustained.   Exception. [5]

J. E. Cummings, called for cross-examination, was asked this question :

Mr. Bracken : " Q. Will you state whether or not, prior to March 19, 1899, after the date of the organization of the company, you made any sales or purchases of the common stock of the Daylight Prism Company of America ? "

Objected to.

Objection sustained.   Exception. [6]

Joseph H. Straub was examined as follows :

Mr. Bracken : I offer to prove by the witness that, as a stock broker, his firm represented G. K. and J. E. Cummings, during the period from the listing of the stock and prior to April 20, 1899, and that during that period he purchased and sold common stock of the Daylight Prism Company on behalf of both of the defendants, and that the sales thus made were duly advertised in the sales made from day to day on the Philadelphia Stock Exchange, and that it will be followed by proof that these advertisements came to the notice of the plaintiff.

Mr. Graham : " Q. Had G. K. Cummings any account with your firm ?   A. I don't know that he had ; I never traded for

him ; the only account I had was with Mr. J. E. Cummings. I did not keep the books ; I only executed the orders on the Exchange, and I only knew Mr. Cummings there (indicating) ; I did not know the other brother in a business way ; I never got an order from him, I don't know that we did. I did not know him in any business transaction."

Mr. Graham : The offer is objected to.

Objection sustained for the reasons stated in answer to former objections to the same offer as to other witnesses. Exception. [7]

C. E. Schmidt, a witness called on behalf of the plaintiff, was asked this question :

" Q. Will you state whether or not, in January of 1899, you had any conversation with either G. K. or J. E. Cummings with reference to the purchase or sale of common stock on the Philadelphia Stock Exchange ? "

Mr. Graham : You may answer, yes or no. " A. Yes."

Mr. Bracken : " Q. With which one had you any conversation ? A. G. K. Cummings. Q. State what the conversation was."

Objected to.

The Court : " Q. This is with relation to common stock ? A. Common stock."

Objection sustained. Exception to plaintiff. [8]

The court charged in part as follows :

The allegation of the plaintiff is that the defendants, while officers, directors and stockholders of the Daylight Prism Company of Pennsylvania, a corporation under the laws of West Virginia, fraudulently and maliciously conspired together to cheat and defraud the public, by inducing members thereof to purchase stock of the company :

1. By making and publishing false statements that dividends had been declared out of earnings of the corporation, when, in fact, no dividends had been earned, and by paying out of the capital stock, sums of money purporting to be dividends declared out of profits.

2. By making, through various brokers, fictitious sales and purchases to and from one another of the stock of the corporation, for the purpose of creating a fictitious market value for

the stock, so as to deceive the public into the belief that the stock had a value which, in fact, it did not possess.

3. By falsely and fraudulently representing to the public that the preferred stock had been so issued, that upon dissolution of the corporation, the preferred stock would participate in the distribution of assets in priority to the common stock,—that is to say, that the preferred stock was entitled to preference in payment of principal as well as dividend out of the assets of the corporation, before the common stock would be entitled to participate at all in the assets.

The plaintiff avers that these alleged false statements were brought to his knowledge and that he believed them to be true. And that in this belief, he purchased on March 23, 1899, 100 shares of preferred stock of the company at $65.00 per share, and on April 20, 1899, 200 shares of preferred stock of the company at $70.00 per share, for which he paid in all $20,500, all of which stock he alleges to have been worthless, both at the time of the purchase and at the present time, or, rather, at the time of bringing this suit, whereby he sustained a loss of the full sum paid by him for the stock.

Counsel for the plaintiff, in his behalf, at the trial has disclaimed any right to recover from the four defendants, Carr, Ringgold, Schmidt and Holden, all of whom he absolves from any part in the alleged conspiracy. These four men were directors of the company at the time of the declaration of the alleged unlawful dividends, and appear to have voted in favor thereof. The four directors named being eliminated from the case, the question to be determined is,—did the three remaining defendants, George K. Cummings, Henry M. Cummings and John E. Cummings, or any two of them, commit the offense complained of, and, if so, was the plaintiff deceived and misled by their combined act to his loss and damage? Of the three defendants last named, Henry M. Cummings only was an officer and director of the company. John E. Cummings was the general manager, and George K. Cummings was a stockholder only.

The charge or allegation, then, is that they, the three Cummings, were guilty of a conspiracy to cheat and defraud in the manner before referred to, and that the plaintiff was thereby deceived to his injury and loss.

\*     \*     \*     \*     \*     \*     \*     \*

With relation to the second and third points, there is no evidence of a substantial character. With relation to the first point, there is evidence in the testimony of Mr. Butler, an expert accountant, that at the time the dividends of January 7, 1899, and April 19, 1899, were declared, certain items in the books were improperly considered and carried as assets; and certain other items should have been considered as liabilities which were not so considered; and that by making these necessary additions to the one side and deductions from the other side of the accounts, it is shown that at the time of the declaration of the dividends, the corporation did not properly have net earnings or profits on its business, out of which it could lawfully pay dividends without depleting its capital.

On the other hand, and as against this testimony of the expert accountant, the plaintiff has offered in evidence the financial report of the condition of the company, made by expert accountants, Francis & Sterrett, just prior to the meeting of directors of January, 1899, in which it is shown that the net profits of the company were something over $16,000; which, if true, placed the company in a financial condition, entitling its directors to declare the dividend which was declared. And this report of the experts appears to have been procured for the guidance of the directors, or, at least, was used and relied upon by them apparently for that purpose, namely, for the declaration of the dividends.

In addition to this fact, the plaintiff has called Messrs. Holden, Schmidt, Ringgold and Carr, four of the defendants, constituting four of the five directors of the company, in office at the time of the declaration of the alleged fraudulent dividends, all of whom have testified that they acted solely upon their own judgment and responsibility in the declaration of the dividends and because they believed it to be proper to do so; and no one of them has been shown to have been materially influenced in his action or in his judgment by any of the three Cummings, the other defendants. It is difficult, therefore, and indeed impossible to find from the evidence that the declaration of dividends referred to, even though they may have been improperly declared and paid, was the result of any preconcerted

action or conspiracy on the part of the three Cummings or any two of them.

In addition to these facts, it is the alleged wrong done the plaintiff and not the conspiracy, if there was one, which is the substance of this case.   That is to say, even though there were a conspiracy among the defendants for the purpose of deceiving the public, yet that fact in itself would not entitle the plaintiff to recover in this cause.   For, in addition to proving a conspiracy on the part of the defendants as alleged, he must also prove that he, the plaintiff, was thereby deceived and misled and that he purchased the stock as a result of what the defendants did in pursuance of their preconcerted intention to practice a fraud upon either the public in general or upon the plaintiff, and that the purchase of the stock under such circumstances resulted in a loss to him.   Of the fact of such deception or that any act or misstatements of the defendants by preconcerted action with intent to defraud was the inducing cause of the plaintiff purchasing the stock in question, there is not sufficient evidence to entitle him to recover.

In cases of this nature, the substance of the plaintiff's allegations must be proved by evidence of a satisfactory character; and if there is no such evidence, it becomes the duty of the court to so instruct the jury.

After a careful consideration of the evidence in this case, I am of the opinion that it is not of such a character as to entitle the plaintiff to a verdict.

Verdict and judgment for defendants.   Plaintiff appealed.

*Errors assigned* were (1–8) rulings on evidence, quoting the bill of exceptions; (21) in giving binding instructions for defendants.

*F. B. Bracken*, for appellant.—The learned court below erred in rejecting testimony offered by the plaintiff to prove collusive sales by defendants, one to the other, on the Philadelphia Stock Exchange, of the common stock of the company, in order to create a fictitious market value therefor: McElroy v. Harnack, 213 Pa. 444.

The deceit practiced by the defendants is the gist of the action; that is, the plaintiff was bound to prove not only that

one or more of the defendants caused the company to declare and publish dividends not earned, but, in addition, that they were actuated therein by the fraudulent purpose to deceive the public as to the condition of the company and thereby induce the purchase of their worthless stock: Laverty v. Varnarsdale, 65 Pa. 507; Rundell v. Kalbfus, 125 Pa. 123; Fillman v. Ryon, 168 Pa. 484; McElroy v. Harnack, 213 Pa. 444; White v. Rosenthal, 173 Pa. 175.

*George S. Graham,* for appellees.

OPINION BY MR. JUSTICE ELKIN, April 20, 1908:

This is an action of trespass for damages claimed to have been suffered by reason of an alleged conspiracy fraudulently and maliciously entered into by defendants to cheat and defraud the public in general and the appellant in particular. In order to sustain a recovery the burden is on appellant to prove by sufficient testimony that such a conspiracy was entered into in the first place, and that as a result of the fraudulent acts done and false statements made for the purpose of furthering the scheme to defraud, he was induced to invest in the preferred stock purchased by him at a price in excess of its real value. Conspiracy is a combination or agreement between two or more persons to do an unlawful thing, or to do a lawful thing in an unlawful manner. A conspiracy to defraud on the part of two or more persons means a common purpose supported by a concerted action to defraud, that each has the intent to do it, and that it is common to each of them, and that each understands that the other has that purpose: United States v. Frisbie, 28 Fed. Repr. 808. In the case at bar seven defendants are charged with conspiracy, but it is conceded there is no evidence against four of them, and certainly as to the other three the evidence is not sufficient to show concerted action or common intent or collusive understanding or unlawful combination to cheat and defraud appellant.

A conspiracy may be proven either by direct and positive testimony showing that a collusive agreement had been entered into to do an unlawful thing, or by acts and circumstances sufficient to warrant an inference that the unlawful

combination had been in point of fact formed for the fraudulent purpose charged, and when circumstantial evidence is relied on to prove the conspiracy its sufficiency must first be determined by the court. It must not be overlooked that in a suit alleging conspiracy between two or more persons, the foundation of the action is the unlawful combination. Failure to prove the unlawful combination defeats the right to recover, and the unlawful combination, like any other substantive fact, must be established by sufficient relevant testimony. If the testimony is direct and positive as a rule the question of sufficiency cannot arise, and in such cases it is for the jury to pass upon the credibility of witnesses and determine the fact by the weight of the evidence. When the testimony is not direct and positive, but where subsequent acts and circumstances are relied on to establish the conspiracy, a very different situation is presented. In such a case the first duty rests with the court to say whether the proven acts and circumstances, even if believed, are sufficient in law to establish in point of fact that the unlawful combination had been entered into by the parties charged, or two or more of them at some prior date. If the subsequent acts do not show, or tend to show, the prior unlawful combination and purpose, the very foundation of the action, it is clear the plaintiff has failed to make out his case and it is the duty of the court to say so. It may be, and no doubt is, often difficult to determine when the subsequent acts relied on are sufficient to establish the conspiracy and when they should be deemed insufficient. These, however, are difficulties with which courts are frequently confronted and which must be met and determined with an eye single to the legal rights of the parties. When conspiracy is alleged it must be proven by full, clear and satisfactory evidence. This measure of proof is recognized in all our cases as the correct rule, and while it is permissible to prove subsequent acts from which the conspiracy itself may be inferred, when such acts are relied on to establish the conspiracy they must be such as to clearly indicate the prior collusive combination and fraudulent purpose, not slight circumstances of suspicion upon which a jury might guess or conjecture as to the fact of such unlawful combination ever having been entered into, but they must be such as to warrant the belief and jus-

tify the conclusion that the subsequent acts were done in furtherance of the unlawful combination and in pursuance of the scheme to defraud.    The subsequent acts must negative the idea of a lawful undertaking or purpose, and must tend to show the prior unlawful combination.    If the subsequent acts show an honest purpose or a lawful transaction, it would do violence to the settled rules of evidence and to the legal rights of parties to hold that testimony which shows subsequent lawful acts is sufficient to establish a prior unlawful combination. The burden is on him who alleges a conspiracy as the foundation of his suit to prove it by sufficient testimony, and, failing to do so, his action falls.    A conspiracy must be proven by substantive facts, not by disconnected circumstances, any one of which, or all of which are more consistent, or just as consistent, with a lawful purpose as with an unlawful undertaking.

In the present case there is no direct or positive testimony showing or tending to show that an unlawful combination had ever been formed by the defendants, or by two or more of them, to cheat and defraud appellant, and the subsequent acts of some of the defendants proven at the trial, and the rejected offers of testimony relating to the sales of common stock on the stock exchange, in no way connected with the purchase of preferred stock at private sale, or with any dealings between appellant and appellees concerning the purchase and sale of the particular stock upon which this suit is based, fall far short of being sufficient to establish an unlawful combination. Under such circumstances it was the duty of the court to take the responsibility by directing the jury to return a verdict for defendants, which the learned trial judge did, and in so doing he followed the rule of our own cases: Newall v. Jenkins, 26 Pa. 159; Gaunce v. Backhouse, 37 Pa. 350; Benford v. Sanner, 40 Pa. 9; Mead v. Conroe, 113 Pa. 220; Collins v. Cronin, 117 Pa. 35; Nat. Bank v. Tinker, 158 Pa. 17.

The first eight assignments of error relate to the refusal of the court to allow appellant to show the listing of the common stock of the Daylight Prism Company on the Philadelphia Stock Exchange and the sales of said stock by the defendants and others through brokers.    The transaction about which appellant complains was the purchase by him of preferred

stock, not listed nor sold on the stock exchange at the time, and in the rejected offers of testimony, it was not proposed to show that the sales of common stock affected the value of the preferred stock, or that it was part of a conspiracy to cheat and defraud, or that when the preferred stock was purchased the price paid for same did not represent its then market value, or that he relied on the quotation of the common stock when he purchased the preferred shares at private sale. The rejected offers of testimony were too indefinite, vague and remote to sustain the allegation of conspiracy and were properly excluded. Nor is McElroy v. Harnack, 213 Pa. 444, authority for a different rule. It is true in that case the plaintiffs were permitted to show that the brokers by what is known as wash or fictitious sales on the stock exchange gave the bonds a high market value, more than their real worth, which enabled the other defendants to borrow money in excess of their value by using the bonds as collateral. It is clear, however, that the whole transaction in that case from the incorporation of the company, the purchase of incumbered real estate, the execution of a mortgage greatly in excess of the value of the property, the issuance of bonds on the same, and the sale of these bonds fictitiously on the stock exchange, was part of a collusive scheme to defraud the public or individuals who had anything to do with the bonds as a purchaser or as a lender of money with them as collateral. Then, again, the brokers in that case who manipulated the fictitious sales were two of the defendants and they had been connected with the collusive scheme from its inception. None of these facts appear in the present case.

The remaining assignments of error, relating to the declaration of dividends and the exclusion of testimony tending to show control of the company by defendants, are without merit under the facts of this case. The excluded testimony, if admitted and believed, was not sufficient to establish a conspiracy to cheat and defraud appellant in the purchase of his preferred stock, and since this is the foundation upon which the right to recover depends, the suit must fall.

Judgment affirmed.