## Morrow v. Morrow, Appellant.

*Husband and wife—Alienation of husband's affections—Joint tort feasors—Conspiracy—Evidence.*

In an action of trespass against three persons to recover damages for injuries resulting from an alleged conspiracy by the defendants to alienate the affections of the plaintiff's husband, the plaintiff must prove a joint tort, and cannot recover upon evidence

showing a tort by one of the defendant's only, or several distinct torts by each of the defendants. The conspiracy must be proven by full, clear and satisfactory evidence; and while it is permissible to prove subsequent acts from which the conspiracy may be inferred, they must be such as to indicate the prior collusive combination and fraudulent purpose.

In such a case a verdict for the plaintiff will not be sustained where the evidence shows that the defendants were prejudiced against the plaintiff by reason of her immoral conduct, but fails to show that there was any combination to do an unlawful thing, and that the acts and declarations of the defendants subsequent to the husband's desertion indicated that they thought alike on the subject of the plaintiff's conduct, and continued to dislike her for reasons that were personal to each. Acts of violence committed by the husband against the plaintiff prior to the desertion are irrelevant where there is nothing to show that such acts were the result of a joint understanding among the three defendants, to connect them, as an inducing cause, with the husband's feelings towards his wife.

Argued April 27, 1915. Appeal, No. 174, April T., 1915, by defendants, from judgment of C. P. Allegheny Co., Jan. T., 1913, No. 58, on verdict for plaintiff in case of Lillian M. Morrow v. Daniel Morrow, et al. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Trespass to recover damages for the alienation of plaintiff's affections.

At the trial it appeared that plaintiff's husband deserted his wife, or left her without her consent on August 18, 1912. The plaintiff charged that the desertion was the result of the defendant's combination to alienate her husband's affections.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,000. Defendants appealed.

*Error assigned,* among others, was in refusing binding instructions for defendants.

*M. H. Stevenson,* for appellant.—The invariable rule in conspiracy cases is that the acts or declarations of one conspirator are not admissible against the others until his connection with the conspiracy has been shown aliunde: Benford v. Sanner, 40 Pa. 9; U. S. v. Goldberg, 7 Bliss (U. S.) 175.

Even where the separate acts of the defendants are illegal and malicious against the plaintiffs, there can be no recovery "without proof that the defendants conspired together to do such acts": Newall v. Jenkins, 26 Pa. 159; Ballantine v. Cummings, 220 Pa. 621.

*Frederick W. Miller,* for appellee, cited: Percival v. Harres, 142 Pa. 369; Russell v. Russell, 236 Pa. 449.

Opinion by Orlady, J., October 11, 1915:

The cause of action averred in the plaintiff's statement, is that these three defendants, upon August 18, 1912, and at various other times prior thereto,......unlawfully and maliciously conspired and agreed, to procure the plaintiff's husband to abandon and desert her, and to alienate the conjugal love and affection of the husband from the plaintiff; in consequence of these unlawful and malicious acts, her husband deserted her on August 18, 1912, and the conjugal love and affection which he therefore had borne for her was totally alienated, etc.

It is thoroughly established by our decisions, that "When a plaintiff declares against two or more persons averring a joint tort, he must prove a joint tort, and cannot recover upon evidence showing a tort by a single person, or several distinct torts by as many distinct persons: Savings Deposit Bank v. Reynier, 41 Pa. Superior Ct. 1. When conspiracy is alleged, it must be proven by full, clear and satisfactory evidence. This measure of proof is recognized in all our cases as the correct rule, and while it is permissible to prove subsequent acts from which the conspiracy may be inferred, when

such acts are relied on to establish the conspiracy, they must be such, as to indicate the prior collusive combination and fraudulent purpose; not slight circumstance of suspicion upon which a jury might guess or conjecture as to the fact of such unlawful combination ever having been entered into, but they must be such as to warrant the belief, and justify the conclusion that the subsequent acts were done in furtherance of the unlawful combination, and in pursuance of the scheme to defraud. The subsequent acts must negative the idea of a lawful undertaking or purpose, and must tend to show the prior unlawful combination. If the subsequent acts show an honest purpose or a lawful transaction, it would be violence to the settled rules of evidence, and to the legal rights of parties to hold that testimony which shows subsequent lawful acts is sufficient to establish a prior unlawful combination: Ballantine v. Cummings, 220 Pa. 621; Hulings v. Darlington, 57 Pa. Superior Ct. 535. A conspiracy must be proven by substantive acts, not by disconnected circumstances, and one of which, or all of which are more consistent, or just as consistent, with a lawful purpose as with an unlawful undertaking.

The important facts in this case are free from controversy, and it is only by a forced and unnatural construction, to have them lead to inferences which would warrant the conclusion reached by the jury. The plaintiff was married to James Cowan in 1898, and by him had two children, aged fifteen and ten years, at the time of the trial. She maintained the wifely relation with her husband until 1909, when she became acquainted with Fred. Morrow, who is a son of Daniel Morrow, one of the defendants, a brother of another, Ephraim, and a cousin of the third defendant, James K. Morrow. She, with her children, followed Fred. Morrow to Oklahoma, where he was an oil well driller, and from June to October, 1910, lived there with him as his avowed wife. It appears that this unlawful relation was not concealed from his family, as the plaintiff on September 12, 1910,

wrote and sent a post card to the mother, from Cody's Bluff, Oklahoma, addressing her as "Dear mother" and signing it, "yours in haste, Mrs. F. Morrow." In October, Fred. Morrow and Mrs. Cowan returned to Pennsylvania, and visited among his father's relatives; announcing themselves as husband and wife, and staying, as such, for one night at the home of the father, who with the mother of Fred. Morrow, surrendered their personal bedroom for use of the son and the putative wife. On November 1, 1910, the plaintiff, as Mrs. Lillie M. Cowan, instituted a divorce proceeding against her husband, James Cowan, in the Court of Common Pleas of Butler County, Pennsylvania, which resulted in a final decree on December 27, 1910. On February 2, 1911, she was formally married to Fred. Morrow, after which time they lived in Allegheny City for a short time, and then removed to Bakerstown, near which village, the defendants lived, and where their respective properties were located near to each other. Differences between husband and wife became so acute that he deserted and abandoned her on August 18, 1913, and this action was brought by her, in which a verdict of $1,000 was recovered, which the court, on a motion for judgment non obstante veredicto, refused to disturb.

We are satisfied after a careful examination of all the testimony, as well as the opinion of the learned trial judge, that the court erred in not affirming the defendants' fifth point, viz: "That under all the evidence the verdict must be for the defendants." It is not necessary to consider the assignments relating to overruling of the defendants' objections to the testimony of Mrs. Morrow and others, as we arrive at our conclusion in the light of all the testimony admitted by the court. It is nowhere shown that there was any combination of these defendants to do an unlawful thing. The admitted deception practiced by the plaintiff, in pretending to be the lawful wife of Fred. Morrow, when she visited, with her paramour, the home of his father and mother, would

naturally arouse a feeling of permanent aversion to her, and, as stated by the court, "all the acts from which a conspiracy between the three defendants can be inferred, except the threat by James K. Morrow, and his removal of a cow, happened on or after August 18th, when the husband left her."

Prior to the marriage, there was decided opposition to it on the part of the father of the husband, and she knew that she was not welcome in that family on account of the facts which were known to all the parties. Notwithstanding this, she states that they severally treated her right, and made no open objection to her. There is no magic in a marriage contract which obliges the family of the husband to accept a questionable daughter-in-law, and it was both natural and lawful for the family to maintain an attitude of protest against that marriage. There is no testimony, showing that any of them discussed the subject until after the husband's desertion. The physical violence alleged by her against her husband —choking and threatening to kill her; being ugly and hateful to her,—the sale of his personal property to his relatives, in leaving the neighborhood, might be important items of evidence in a personal action against the husband, but there is no word, act or circumstance tending to show a joint understanding among the three defendants, to connect them, as an inducing cause, with the husband's feelings toward his wife. The most that can be inferred from the isolated subsequent acts would be that for reasons deemed good and sufficient, the relatives thought alike on the subject, and continued to dislike her for reasons that were personal to each. This measure of proof falls far short of that demanded by the decisions. It is not necessary to consider the legal effect of the Butler County divorce decree, as the plaintiff's case fails for lack of proof to sustain her action.

The judgment is reversed.