## THE STATE v. REYNOLDS, Appellant.

### Division Two, February 3, 1903.

1. **Jury: PANEL: REJECTING QUALIFIED VENIREMEN.** If all the men selected on the panel are qualified, defendant can not be heard to complain because the court rejected some other veniremen who were also qualified.

2. **New Trial: NEWLY-DISCOVERED EVIDENCE.** Where it is not probable that a different result would have been produced had a new trial been granted on the ground of newly-discovered evidence, there is no error in overruling the motion therefor.

Appeal from Webster Circuit Court.—*Hon. Argus Cox,* Judge.

AFFIRMED.

*S. N. Dickey* and *Harrington Wadlow* for appellant.

*Edward C. Crow,* Attorney-General, and *Jerry M. Jeffries* for the State.

(1) Defendant interposed an objection to the introduction of any evidence in the cause and alleged as a reason therefor that the information was not sufficient on which to base the prosecution. The sufficiency of the information or indictment can not be raised by an objection *ore tenus* to the introduction of testimony. State v. Meyers, 99 Mo. 107; State v. Duncan, 116 Mo. 296; State v. Risley, 72 Mo. 609. (2) The information is sufficiently specific in form to charge murder in the first degree. By it nothing is left to implication. It is in the usual form, and charges all the essential averments of murder in the first degree. State v. Silk, 145 Mo. 240; State v. Burns, 148 Mo. 167. (3) There is nothing in the record or bill of exceptions to show that the court improperly excluded any juror. No exceptions were saved to any action of the court in the selec-

tion of the jury.   The exception must not only be saved, but it must also be preserved in the bill of exceptions. State v. Clark, 147 Mo. 20.   A statement in the motion that the court erred in refusing to sustain defendant's challenges to a juror, whose name is not given in the motion for a new trial, will be disregarded on appeal. State v. Tomasitz, 144 Mo. 86.   (4)   Defendant asks a new trial on the ground of newly-discovered evidence.   As shown by the affidavits on file the alleged new evidence is that witness John Barnard, after testifying in the case and while the attorneys were making their argument, said to others that deceased and himself fired on defendant first in the first instance; that this contradicted his statement on the witness stand.   There are counter affidavits filed in the case which deny the facts set out in the affidavits filed by defendant.   It will also be observed that the alleged statement of the witness was as to the first shooting, which is a matter (especially in the light of defendant's testimony) entirely immaterial.   The real question here was as to who shot first when the second shooting began.   Courts do not favor new trials because of newly-discovered evidence. State v. Bybee, 149 Mo. 632.   The newly-discovered evidence must be such that it would probably produce a different result at a new trial.   Such does not appear here.   State v. Miller, 144 Mo. 26.

BURGESS, J.—On the eleventh day of February, 1902, the prosecuting attorney of Webster county filed in the office of the clerk of the circuit court of said county an information under his official oath, charging that the defendant, J. M. Reynolds, theretofore at said county, to-wit, on the first day of January, 1902, did feloniously, willfully, deliberately, premeditatedly, and with malice aforethought assault and kill with a Winchester rifle, a dangerous and deadly weapon, one Willis Gale, and charging his two sons, Zeb Reynolds and Barney Reynolds, with being accessories before the fact.

At the March term, 1902, of said court, the defend-

ants were put upon trial; the defendants, Zeb Reynolds and Barney Reynolds, were found not guilty, and the defendant, J. M. Reynolds, convicted of murder in the second degree, and his punishment fixed at ten years imprisonment in the penitentiary.

From the judgment and sentence he appeals.

The facts, briefly stated, are that at the time of the homicide, Gale, the deceased, owned a large tract of land in Webster county upon which he with his family had resided for several years before the difficulty. A part of this land he had leased to Zeb Reynolds, a son of appellant, who was occupying it, and cultivating part of it, and cutting the timber from another tract. Defendant J. M. Reynolds, lived on a farm adjoining the Gale farm, but on the opposite side of the farm from the part leased by the son. For convenience of all parties and neighbors to pass across the Gale land a gate was erected at the foot of a hill on this land. It appears that a dispute arose between Reynolds and Gale concerning the leased land and Gale posted notices forbidding hunting and trespassing; these notices were always torn down almost as soon as put up. Deceased then gave defendant, who had become sublessee in the land leased, written notice of his intention to terminate the lease on January 1, 1902, and directing him to move all of his crop and other property off of said land by that time. Defendant paid no attention to the notice, and on the afternoon of January 1, 1902, Gale closed the gate on the passway leading to his land leased by defendant and his sons and locked it. He then kept watch on the gate, going there two or three times that afternoon.

Zeb Reynolds lived on the opposite side of the Gale farm from his father. On the evening of January 1, 1902, he with his team and wagon, started to his father's going through the field; on coming to the gate and finding it closed and locked he turned back and went around by the public road. Later on the same day he left his father's to return home, taking with him his two brothers. They each carried a shotgun or rifle, and

drove direct through the field. On reaching this gate they removed some poles, broke the lock and were about to drive through. At this time they heard some voices on the hillside near them, and after a hasty consultation decided to fire upon those whom they could dimly see through the darkness, which they did. Gale and his farm hand, John Barnard, had gone to the gate to see if it was still undisturbed, and while there heard the Reynoldses coming, and retreated to the hillside where they were fired upon. Barnard carried a shotgun, and Gale carried a 22-calibre target rifle and a 22-calibre pistol. With these they returned the shots and several shots were exchanged. The State's contention was, and it was fairly well proved, that defendant was with his sons all the time, but defendant contended that he remained at home and on hearing the shots took his Winchester rifle and hurried to the scene. The State contended and proved that the firing, after ceasing for some minutes, was again renewed by the Reynoldses firing the first shots, as they had done in the first instance. Defendant contended that when he reached the scene he halted at the gate, where he was fired upon from the hillside. It was during this second encounter that Gale received a bullet shot from the Winchester rifle which struck him in the abdomen and passed entirely through his body. After Gale fell he was fired upon several times. Reynolds then left the scene, Barnard went for the wounded man's wife and some neighbors, who came and carried Gale home, where he died before daylight next morning. Defendant was arrested at his home next morning. At the trial defendant contended that Barnard and Gale made the first assault and that he fired in self-defense and in the defense of his sons.

The court instructed for murder in the first and second degrees, and on self-defense of defendant, and on the defense of his son.

We have not been favored with an argument or brief on the part of defendant in this case, and shall have to be governed in a great measure in passing upon the record by the errors complained of in the motions

for a new trial, and in arrest.

The first error assigned in the motion for a new trial, is the action of the court in rejecting from the venire summoned from which forty persons competent to sit as jurors upon the trial of the cause were to be, and in fact were found upon their *voir dire* examination to be so, qualified, from which twelve were to be selected as a traverse jury to sit in judgment upon the case. It is not asserted in the motion that the panel from which twelve jurors were to be selected as a traverse jury to sit in judgment on the case was not composed of forty qualified jurors, but it seems that there were persons summoned on the venire in the first instance who were not accepted by the court, whom defendant would have preferred to others that were accepted, but all that defendant was entitled to was a panel of forty qualified jurors from which to make his challenges, and this he had. He had no right to say that the panel should be in whole or in part composed of any particular person or persons, hence, there was no error in this regard.

It is asserted that the court erred in permitting the State to introduce incompetent, irrelevant and inadmissible testimony, and in excluding competent and material testimony offered by defendant, but after a careful examination of the record we have been unable to discover any ruling of the court which would justify either contention.

It is also said in the motion that the court erred in giving improper instructions to the jury over the objections of defendant. The instructions are in form often approved by this court, and, in so far as the appellant is concerned, free from error, and all that he could have desired.

Another assertion in the motion is, that the court failed to instruct the jury upon the law applicable to the case, but we are not advised in what particular it failed to so instruct, nor have we the remotest idea. This contention is therefore untenable.

The verdict of the jury was not only well warranted

by the evidence, but it is difficult to see how they could have arrived at any other conclusion under the evidence and the instructions of the court than that of the guilt of the defendant.

It is also claimed that the court should have granted the defendant a new trial upon the ground of newly-discovered evidence.

As shown by the affidavits in support of this motion, the alleged newly-discovered evidence is that one John Barnard, a witness for the State, after testifying in the case and while it was being argued, said that deceased and himself fired on defendant first in the first instance, and this contradicted the statement made by him while on the witness stand with respect to the same matter.

There were, however, affidavits presented by the State which contradicted the matters set forth in the affidavits filed by defendant. It is clear that the statements of the witness in question were with respect to the first shooting, which under the instructions of the court were entirely immaterial, the real question being, who shot first, when the second shooting began, or when the shooting was renewed.

The evidence was in the first place immaterial, and in the second place it is not probable that a different result would have been produced had a new trial been granted (State v. Miller, 144 Mo. 26; State v. Ray, 53 Mo. 349; State v. Rockett, 87 Mo. 666; State v. Butler, 67 Mo. 59; State v. Welsor, 117 Mo. 570), and under such circumstances there was no error in overruling the motion on that ground.

The information is challenged in the motion in arrest upon the grounds that it charges no offense and is so vague, ambiguous and uncertain that it does not inform the defendant of the offense of which he is charged. But it is apparent from a casual reading of the information that neither of these positions is well taken. The information is in accordance with the most approved forms of indictments for murder in the first degree, and is not subject to the objections urged against

it in the motion in arrest, but is well enough.

For these intimations the judgment is affirmed. All concur.