## Commonwealth *v.* Henderson, Appellant.

*Criminal law—Homicide—Jury—Selection of jurors—Excusing jurors for cause—Physical disability—Conscientious scruples—Right to impartial jury—Discretion of court.*

1. In the selection of a jury to try one accused of murder, it is not error for the court to excuse a juror because he is crippled, although the juror has not asked to be excused, where in the opinion of the court such juror is physically unable to stand the strain which would necessarily be imposed upon him in the trial of the case. Such matters are within the discretion of the trial judge.

2. In such case, it is not an abuse of discretion on the part of the court to excuse jurors for cause on account of their having stated that they are opposed to capital punishment, though such jurors have qualified themselves under the law by stating that they could disregard their conscientious scruples and render their verdict according to the law and the evidence. In exercising his discretion as to the fitness of a juror to serve, the trial judge has the juror before him and much latitude must be left him; and the weight to be given to the answers of a juror when examined on his voir dire is not to be determined exclusively by his words as they appear in the record. The court in the exercise of a wide discretion may conclude that such juror is not competent to enter the jury box for the purpose of rendering an impartial verdict notwithstanding his words to the contrary, and nothing short of a palpable error will justify a reversal of a trial judge in passing upon a challenge for cause.

3. The right to have a cause tried by an impartial jury does not give a right to the service of any particular individual, and where

the full panel has not been exhausted the defendant is not prejudiced by the exclusion of jurors for cause.

*Trial—Remarks by district attorney.*

4. A conviction of murder of the first degree will not be reversed because the district attorney made promises in his opening address of proofs which he subsequently failed to produce, where the trial judge has found that the district attorney did not intend to abuse his power and where a review of the whole record justified the conclusion reached by the court below that no harm was done to the defendant by the remarks complained of.

*Evidence—Res gestæ—Testimony of lay witnesses as to sanity.*

5. It is not error on a trial of one accused of murder, to permit a witness under objection to testify that she had destroyed a note which she found on the body of the deceased, there being no evidence that the defendant was present at the time, where the finding of the note was part of the res gestæ of the discovery of the body of the deceased and it was proper for the Commonwealth to show why it was not produced in court, and this is especially true where the witness had previously stated, without any objection from the defense, that she had destroyed the note.

6. The court made no error in such case in refusing to allow certain nonexpert witnesses for the defense to testify on the question of the sanity of the defendant and in permitting a number of such witnesses to testify for the Commonwealth where no proper foundation was laid for the opinion of the witnesses for the defendant, while those for the Commonwealth testified to an acquaintance with the prisoner and opportunities for observations which sufficiently qualified them for the purpose for which they were called.

*Criminal law—Murder—Insanity—Burden of proof.*

7. On the trial of one accused of murder, it was not error for the court to refuse a point for charge offered by the defendant which attempts to state the laws governing the cases of hallucinations and delusions, where there was no evidence which would have justified such an instruction.

8. The court made no error in such case in refusing loosely drawn instructions to the effect that the accused should not be convicted if he was "laboring under mental derangement, although not constituting total insanity," or was "so addicted to the use of cigarettes that the effect upon his mental and physical system was to poison his faculties and make him unconscious of a moral sense of right and wrong," or in refusing to instruct that "if the jury had a reasonable doubt as to the mental responsibility of the de-

fendant at the time of the commission of the crime, such a doubt must operate in favor of the defendant to prevent a conviction of murder of the first degree."

9. The court committed no error in such case in refusing an instruction to the effect that "the jury are not permitted to presume a motive for the act of the defendant or that the defendant had formed a deliberate or specific intent to take the life of the deceased, but must find these elements from the evidence," where there was nothing approaching positive evidence of insanity, and under the facts it was not essential that the testimony should show a motive for the killing, and especially where in his general instructions the trial judge made it plain that the presumption on all the essential elements of the crime with which the defendant was charged should be drawn in his favor.

Argued Oct. 6, 1913. Appeal, No. 241, Oct. T., 1913, by defendant, from judgment of O. & T. Cambria Co., June S., 1912, No. 4, on a verdict of guilty of murder of the first degree in case of Commonwealth v. George Henderson. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Indictment for murder. Before STEPHENS, P. J.

The opinion of the Supreme Court states the facts.

The jury found a verdict of guilty of murder of the first degree, upon which sentence of death was passed.

*Errors assigned* were in discharging a juror for physical incapacity, in excusing a juror because he was opposed to capital punishment, various rulings of the trial judge and various instructions to the jury, as appear by the opinion of the Supreme Court.

*S. L. Reed,* with him *F. P. Martin,* for appellant, cited: Com. v. Green, 227 Pa. 86; Com. v. Drum, 58 Pa. 9; Murray v. Com., 79 Pa. 311.

*Charles C. Greer,* District Attorney, with him *Bruce H. Campbell,* Assistant District Attorney, *Percy Allen*

*Rose* and *James Wilson Leech,* for appellee, cited: Com. v. Minney, 216 Pa. 149; Com. v. Curcio, 218 Pa. 327; Com. v. Payne, 205 Pa. 101; Com. v. Mudgett, 174 Pa. 211; Surface v. Bentz, 228 Pa. 610; Com. v. Wireback, 190 Pa. 138; Com. v. Dudash, 204 Pa. 124; Com. v. Gibson, 211 Pa. 546; Weston v. Com., 111 Pa. 251.

OPINION BY MR. JUSTICE MOSCHZISKER, November 7, 1913:

The defendant, George Henderson, was convicted of murder of the first degree. It appears from the testimony in the case that at the time of the homicide he was between 18 and 19 years of age, and resided with his mother in East Conemaugh; that on the 8th day of May, 1912, his mother and sister visited friends a short distance from their residence; that the defendant went there and suggested that they wait until he returned to take them home; that about 7:30 in the evening he called upon a young woman named Fern Davis, who lived with her parents in East Johnstown, and to whom he was paying attention; that shortly thereafter he and Miss Davis left her home and were seen together in East Conemaugh about 8 o'clock walking toward the defendant's residence; that between 9 and 10 o'clock Mrs. Henderson and her daughter returned to their house, and upon entering the dining room found a prostrate form upon the floor, with a note which read, "this is Miss Davis"; that the body was covered with blood and there were several cuts and abrasions upon the head and face, which had evidently been inflicted with a thick, heavy instrument or weapon; that Mrs. Henderson called in several neighbors, and one of them discovered a large club wrapped in paper besmeared with blood nearby; that the young woman was taken to a hospital in an unconscious condition and grew steadily weaker until Saturday afternoon, May 11th, when the doctors in charge concluded that an operation was necessary, which they performed; that she died the follow-

ing morning without having regained consciousness. Several physicians testified that in their opinion death was due to heavy blows upon the head, such as could have been inflicted by the club found near the injured girl. The defendant was seen walking aimlessly about the streets of East Conemaugh between 1 and 2 o'clock on the morning of Thursday, May 9th, and was taken into custody. The officer who apprehended him stated that upon being placed under arrest the prisoner said, "I was looking for this a couple of hours ago"; and the chief of police who took him from East Conemaugh to the Johnstown jail testified that after Henderson had been informed concerning the reason for his arrest, he asked how the girl was, and a little later inquired if she was going to die, and when the witness said to him, "I suppose you thought she was dead when you left her?" the defendant replied: "I felt sure that she was dead, and I was so damned bad scared I didn't know what to do." The defendant first pleaded "guilty," but with leave of court afterwards changed his plea to "not guilty"; he did not take the stand in his own behalf, and the fact that he had killed the deceased was not disputed; the defense was insanity at the time of the killing. Several lay witnesses were permitted to state an opinion that the accused was insane, but no experts were called in his behalf. The verdict was guilty of murder of the first degree, and the defendant has appealed.

The first specification complains that "the court erred in excusing......a juror, because he was crippled, when the juror had not asked to be excused." In reference to this the court below states in its opinion refusing a new trial that, "the condition of the juror was such that it was apparent that he was physically unable to stand the strain that would be necessarily imposed upon him by being selected as a juror in a case of the character of the one for which the jury was then being selected." Such matters are within the discretion of the trial judge

(Jewell v. Com., 22 Pa. 94, 101), and we are not convinced of error in the present instance.

The next specification is that the court "erred in excusing jurors for cause on account of their being opposed to capital punishment; such jurors having qualified themselves under the law by stating that they could disregard their conscientious scruples and render their verdict according to the law and the evidence." The particular juror whose examination is called to our attention by this assignment first asserted that he had conscientious scruples against capital punishment which he feared he could not overcome, but subsequently said that he could render a verdict according to the evidence. Had the court permitted this juror to serve it would not have been error, but, as just stated, such matters are peculiarly for the trial judge, and a ruling thereon will not be reversed unless a palpable abuse of discretion appears; in the words of our Brother BROWN, in Com. v. Sushinskie, 242 Pa. 406, "The challenge of a juror for cause is addressed to the trial judge, and much weight must be given to his judgment in passing upon it. In exercising his discretion as to the fitness of a juror to serve, he has the juror before him, and much latitude must be left to him; and the weight to be given to the answers of a juror when examined on his voir dire is not to be determined exclusively by his words as we read them in the printed record. They are first to be weighed by the trial judge who sees and hears the juror, and in the exercise of a wide discretion, may conclude that he is not competent to enter the jury box for the purpose of rendering an impartial verdict, notwithstanding his words to the contrary: Clark v. Com., 123 Pa. 555; Com. v. Roddy, 184 Pa. 274; Com. v. Eagan, 190 Pa. 10; Com. v. Spahr, 211 Pa. 542; and nothing short of a palpable error will justify a reversal of a trial judge in passing upon a challenge for cause: Com. v. Crossmire, 156 Pa. 304." Moreover, since the full panel was not exhausted, the defendant was not prejudiced by the ex-

clusion of the jurors in question; the right to have a cause tried by an impartial jury does not give a right to the service of any particular individual (Com. v. Payne, 205 Pa. 101, 103; Mansell v. The Queen, 8 E. & B. 54*, 73*, 79*; U. S. v. Byrne, 7 Fed. Repr. 455, 457; Watson v. Walker, 33 N. H. 131, 144; Shubert v. State, 66 Miss. 446, 450; State v. Reynolds, 171 Mo. 552, 556; Asevado v. Orr, 100 Cal. 293, 300; 24 Cyc. 251); the thing which the law especially seeks to guard is the right to reject, not to select: Com. v. Brown, 23 Pa. Superior Ct. 470, 498; State v. Jones, 97 N. C. 469.

The third specification calls attention to certain remarks of the district attorney in his opening address, wherein he made promises of proofs which he subsequently failed to produce. In dealing with this incident the trial judge states his conviction that the Commonwealth's representative did not mean to abuse his power and that no harm was done to the defendant by the remarks complained of; after reviewing the whole record, we agree with the conclusion of the court below.

The fourth specification complains that "The court erred in permitting the witness for the Commonwealth, Mrs. Mary Henderson, to testify that she destroyed a note which she found on the body of the deceased, when there was no evidence that the defendant was present at the time." The finding of the note was part of the res gestæ of the discovery of the body of the deceased, and it was proper for the Commonwealth to show why it was not produced in court. The evidence was competent on this ground alone, but, in addition, the witness had previously stated that she had destroyed the note, without any objection from the defense; hence, the admission of the testimony in question could not have done the defendant any material harm. We see no merit in the assignment.

The next five specifications complain that the court erred in not allowing certain nonexpert witnesses for the defense to testify "on the question of the sanity of

COMMONWEALTH v. HENDERSON, Appellant. 379

the defendant," and in permitting a number of such witnesses to testify for the Commonwealth. Concerning this, an examination of the record shows that the trial judge ruled correctly as to both classes of witnesses, within Com. v. Wireback, 190 Pa. 138, 145; no proper foundation for an opinion was laid by the witnesses for the defendant, and those for the Commonwealth testified to an acquaintance with the prisoner and opportunities for observation which sufficiently qualified them for the purpose for which they were called.

The succeeding three specifications embrace abstracts culled from the charge of the trial judge, which when taken with their context and the charge as a whole do not present error and could not have harmed the defendant.

The thirteenth specification covers a request for charge on the part of the defendant which attempts to state the law governing cases of hallucinations and delusions. The request was denied "for the reason that it was not supported by evidence in the case." We recently had occasion thoroughly to discuss this subject in Com. v. Calhoun, 238 Pa. 474, and we do not deem it necessary to go into the matter again at this time; under the testimony the request as drawn was not relevant to the case, and it was properly refused upon that ground.

The fourteenth and fifteenth specifications complain of the refusal of two other requests for charge submitted by the defendant, both of which were so loosely drawn that they could not properly have been affirmed. The first asked the court to state that the accused could not be convicted of murder of the first degree if he was "laboring under mental derangement although not constituting total insanity," and the next to instruct that if the defendant was "so addicted to the excessive use of cigarettes that the effect thereof upon his mental and physical system was to poison his faculties and make him unconscious at times of a moral sense of right or

wrong," he could not be convicted. The trial judge would not have been justified in making any such vague statements of law to the jury, since they would have tended to confuse rather than to enlighten the triers upon their duties.

The sixteenth specification complains because the trial judge refused to instruct, "if the jury have a reasonable doubt as to the mental responsibility of the defendant at the time of the commission of the crime, such a doubt must operate in favor of the defendant to prevent a conviction of murder of the first degree." As to this, it is sufficient to say that the law is not correctly stated in the request: Com. v. Sushinskie, supra.

The final specification is to the effect that the court erred in not instructing as requested that "the jury is not permitted to presume a motive for the act of the defendant nor to presume that the defendant formed a deliberate or specific intent to take the life of the deceased; but the jury must find these elements from the testimony before there can be a conviction of murder of the first degree." There was nothing approaching "positive evidence" of insanity, and under the facts of this case it was in no wise essential that the testimony should show a motive for the killing (Com. v. Calhoun, 238 Pa. 474, 487; Com. v. Danz, 211 Pa. 507, 516; Com. v. Buccieri, 153 Pa. 535, 544); hence, the point was properly refused. But in his general instructions the trial judge made it plain that the presumptions on all the essential elements of the crime with which the defendant was charged were to be drawn in his favor, and affirmed without qualification a point which stated, "Before the jury can convict the defendant of murder of the first degree, they must find from the evidence, beyond a reasonable doubt, that the defendant......did form a specific intent to take the life of the deceased"; under the circumstances, the defendant has no ground for complaint.

The case was carefully tried and every right of the

accused was safeguarded; it was submitted to the jury in a charge which stated the applicable rules of law and correctly covered all relevant matters suggested by the defendant's points. The few mistakes found upon the record made for, rather than against, the defendant. We are not convinced of substantial error and feel that the verdict was fully justified by the evidence.

The assignments are overruled, the judgment is affirmed, and the record is remitted to the court below for the purpose of execution.