## Commonwealth *v.* Smith, Appellant.

*Criminal law—Murder—Preliminary statement by district attorney—Confessions — Written statement — Letter to wife — Evidence—Cross-examination—Improper remark by district attorney— Withdrawal of juror—Attorney-at-law as witness.*

1. A conviction of murder will not be set aside because, in outlining his case in good faith, the district attorney accidentally refers to some matter as to which the trial judge later excludes evidence.

2. In a murder trial a written statement made by the prisoner at the time of his arrest is properly admitted in evidence where it is shown to have been made voluntarily, without coercion or promise.

3. In such case, it is not error to permit the police official who talked with the prisoner when the statement was made, to testify that later, when he sought further information from the prisoner, the latter said he refused to talk on advice of counsel.

4. Nor is it improper to permit the district attorney to ask the prisoner on cross-examination who his counsel then was.

5. A letter written by the prisoner when in jail, to his wife, confined in the same jail, but not delivered to her, is admissible as against the prisoner.

6. When a letter, written by a party to a suit, is in evidence, it is not reversible error to permit him to be asked on cross-examination what he meant by certain doubtful expressions therein.

7. Where a prisoner testifies that the district attorney promised him immunity if he would "tell the truth," and the district attorney immediately says to him "Don't you know that is a miserable frame-up in your mind?" the remark is improper, but is not ground for withdrawing a juror; especially if the district attorney goes on the stand and denies the charge made against him.

8. In this case it would be unjust to apply the unwritten rule that precludes a lawyer from being a witness for his client.

9. A remark of the district attorney that the prisoner "didn't have the heart of a man, or the soul of a man," was held, under the circumstances proven, not sufficient ground for withdrawing a juror.

Argued April 25, 1921. Appeal, No. 436, Jan. T., 1921, by defendant, from judgment of O. & T., Bradford Co., Sept. T., 1920, No. 1, on verdict of guilty of murder of the first degree, in case of Commonwealth v. Floyd Smith. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Indictment for murder. Before MAXWELL, P. J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings and instructions as set forth in the opinion of the Supreme Court.

*Stephen H. Smith* and *Joseph W. Beaman,* for appellant.—The district attorney is an officer of the court, and his office is of a quasi judicial character. Statements made by him and not corrected by the court, have more weight with the jury than is the case with counsel in civil cases. Yet in many civil cases, judgment has been reversed on the sole ground of such improper remarks of counsel: Fisher v. Penna. Co., 34 Pa. Superior

Ct. 500; Walsh v. Wilkes-Barre, 215 Pa. 226; Wagner
v. Township, 215 Pa. 219; Freeman v. Traction Co., 36
Pa. Superior Ct. 166.

The above line of cases has been followed by the Su-
perior Court in criminal cases: Com. v. Williams, 41 Pa.
Superior Ct. 326; Com. v. Swartz, 37 Pa. Superior Ct.
507.

*William G. Schrier,* District Attorney, with him *Wil-
liam M. Rosenfield,* for appellee.

OPINION BY MR. JUSTICE WALLING, May 26, 1921:

On March 22, 1920, the wife of defendant, Floyd
Smith, gave birth to a male child, called Francis Smith.
They were then residing at Elmira, New York, and, as
they had been married but two months, defendant denied
the paternity of the child. On April 20, 1920, its dead
body was found partly covered by rocks in the bed of a
creek, near South Waverly in Bradford County, Pa. At
the trial defendant admitted placing the child's body in
the creek and that he had caused its death, but claimed
the latter was accidental. He was convicted of murder
of the first degree and, from the sentence pronounced
thereon, brought this appeal.

We have carefully examined the entire record but find
no cause for reversal. There was evidence that defend-
ant had been unkind to the child, had tried to give it
away and had threatened its life. In that connection
the district attorney stated in opening the case, "that the
child was so treated that the officers of the Society for
the Prevention of Cruelty to Children were called in."
Defendant's counsel objected to this statement and un-
successfully requested the withdrawal of a juror. When
proof of such statement was offered it was excluded, but
the trial judge finds the district attorney acted in good
faith. It is not necessary to decide whether the proof
offered was competent, for a conviction will not be set
aside because in outlining his case in good faith the dis-

trict attorney accidentally refers to some matter as to which the trial judge later excludes evidence (see Commonwealth v. Henderson, 242 Pa. 372), otherwise every offer of incompetent testimony made in the presence of the jury on part of the Commonwealth might cause a mistrial.

Defendant was arrested April 22, 1920, in Binghamton, New York, and thereupon made a written statement of an incriminating nature. This was properly admitted in evidence as it was shown by the Commonwealth to have been voluntarily made, without coercion or promise.

While in jail, awaiting trial, defendant wrote a letter to his wife, who was also confined in another part of the jail on the same charge, which contains damaging statements. Defendant handed the letter, unsealed, to a fellow prisoner with a request to deliver it to the wife, which was not done. The trial judge properly admitted the letter as evidence for the Commonwealth; it never came to the wife's possession and therefore was not a piece of evidence furnished by her directly or indirectly. In this the case differs from Com. v. Fisher, 221 Pa. 539. As the open letter was handed to a third party and never reached the wife, it cannot be regarded as a confidential communication between husband and wife: Hammons v. State (Kan.), 68 L. R. A. 234; People v. Dunnigan, 163 Mich. 349, s. c. 31 L. R. A. (N. S.) 940. It is not unlike the case of statements made by a husband to his wife in presence of a third party, and to which the latter may testify: 5 Chamberlayne on the Modern Law of Evidence, sec. 3699, p. 5294.

Captain Shay, of the Binghamton police department, was present and talked with defendant when he made the written statement, and we see nothing prejudicial in permitting the captain to testify that later when he sought further conversation with defendant, the latter said he refused to talk on advice of counsel. That was a proper attitude for a defendant to take and did no harm. Nor was it improper to permit the district attor-

ney to ask the defendant upon cross-examination who his counsel then was.

The latitude of cross-examination is largely in the discretion of the trial judge; and there was no such abuse thereof as calls for a reversal in permitting the district attorney to ask defendant what he meant by certain expressions in the letter to his wife, as it was in evidence, and greater latitude is permissible in the cross-examination of parties than of other witnesses. In other words, when a letter, written by a party to the suit, is in evidence, it is not reversible error to permit him to be asked on cross-examination what he meant by certain doubtful expressions therein.

What is excusable conduct in a prosecuting attorney depends somewhat upon the surroundings and atmosphere of the trial. Here defendant had just testified that before he made the statement at Binghamton the district attorney had taken him aside and practically promised him and his wife immunity if he would "tell the truth." It was then the district attorney asked, "Don't you know that is a miserable frame-up in your mind?" The question was improper and the trial judge promptly sustained an objection to it, but it was not such glaring misconduct, under the circumstances, as required the withdrawal of a juror. It was natural for the district attorney to resent the charge of grave misconduct made against him, and to take the witness stand, as he did, and deny it. Had he failed to do so, it would have been a tacit admission that he promised the defendant immunity to secure a confession; hence, it would be unjust to apply here the unwritten rule that precludes a lawyer from being a witness for his client.

The defendant and his wife left Elmira with this child on the afternoon of April 16, 1920, and arrived in Waverly about dark, where they left the train, and, as he states, walked south into Pennsylvania intending to leave the infant on the porch of some farm house. They came to an earth road, it began to rain and he testifies

that the wife went back to the railroad waiting station, while he went on with the child, and further that as he approached a farm house he was set upon by a dog and, in running away, stumbled in the road and fell upon the babe causing its death, and then being frightened placed it in the creek, with the stones upon it, as above stated. This story disagrees with his Binghamton statement wherein he says the child was alive and crying when he left it in the creek. It disagrees with one statement he made that they had given the child to a young married couple and with another statement that they had given it to a woman named Myrtle. An autopsy disclosed that the infant's head had been crushed on both sides, as if placed on a large rock and then violently struck with a smaller one; and further that it was dead when placed in the creek. Defendant took with him that night a bundle of the child's clothes, which was found next day on a near-by freight car with no mud or dirt upon it. This discredits the alleged fall with the babe and bundle in the wet dirt road. Moreover, it would be next to a physical impossibility for a man to fall forward, as he says he did, in a dirt road, while carrying an infant, so as to fracture both sides of its flexible skull. All the evidence points to the conclusion of a wilful killing under such circumstances as seem to excuse the district attorney's remark to the jury that under the evidence its perpetrator "didn't have the heart of a man, or the soul of a man." At least such remark under the facts did not demand a discharge of the jury and a continuance of the case. Complaint is also made that the district attorney said to the jury, "Don't you suppose he told the attorney about the whole matter?" As the context is not stated, it is impossible to know to whom or what the question referred or whether it was improper.

As the verdict of the jury implies a finding that the killing was wilful and intentional, the defendant was not harmed by the district attorney's remark to the effect that involuntary manslaughter was a minor offense.

The charge of the trial judge was fair and adequate and the criticisms made to excerpts therefrom are entirely without merit.

The assignments of error are all overruled; the judgment is affirmed and the record is ordered remitted for the purpose of execution.