## Commonwealth *v.* Torti et al., Appellants.

*Criminal law—Murder—Evidence—Impounding suspicious paper—Remarks of district attorney—Withdrawing juror.*

1. Where, in a murder trial, a paper used by a witness for defendant to refresh his recollection, is not offered in evidence, but the trial judge, after inspection which arouses his suspicion, quietly directs that the paper be left with the clerk of the court, and the jury knows nothing of anything done as a result of the impounding of the paper until after their verdict and discharge, defendant cannot on appeal claim the impounding of the paper was a ground for reversing the conviction.

2. In such case, the failure of defendant to offer such paper in evidence was not an improper subject for comment by the district attorney.

3. If he comments by saying, "If you don't want the jury to know the truth of it, all right," and the court directs the jury to disregard the remark, the court acts within its discretion in not withdrawing a juror, and defendant cannot complain.

Argued February 9, 1925. Appeals, Nos. 253 and 254, Jan. T., 1925, by defendants, from judgment of O. & T.

44    COMMONWEALTH *v.* TORTI et al., Appel.

Lackawanna Co., Oct. T., 1924, Nos. 4 and 7, on verdict of guilty of murder of the first degree, in case of Commonwealth v. John Torti, alias John Demartini, and Torso Burchanti, alias Tony Burlandi, alias Louis Varni. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Indictment for murder. Before MAXEY, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree on which sentence was passed. Defendants appealed.

*Error assigned* were various rulings, quoting record.

*Thomas A. Doherty,* with him *Frank L. Martin,* for appellant, cited as to remarks of district attorney: Com. v. Ezell, 212 Pa. 293; Com. v. Dorman, 22 Pa. Superior Ct. 20; Linn v. Com., 92 Pa. 285; Whitehall v. Lotwalt, 3 P. & W. 313; Fawcett v. Fawcett, 95 Pa. 376; Connelly v. Walker, 45 Pa. 449.

*Harold A. Scragg,* District Attorney, with him *Robert P. Silverstein,* Assistant District Attorney, for appellee, cited: Com. v. Smith, 270 Pa. 583; Com. v. Bubnis, 197 Pa. 542.

OPINION BY MR. JUSTICE SCHAFFER, March 16, 1925:

The two defendants were tried together for the killing of Edward Murphy and were found guilty of murder of the first degree. Their appeals raise certain questions growing out of what they allege to be errors in their trial, in disposing of which a consideration of the salient circumstances connected with the crime is necessary.

Defendants were employed at a colliery of the West End Coal Company, located at Mocanaqua, some distance from the City of Scranton. It was the custom of the company's paymaster to go to a bank in that city every two weeks to obtain the money for the payroll

at the mine.  On the day of the crime, July 30, 1923, he
obtained from the bank a sum in excess of $70,000, and
shortly after nine o'clock in the morning, as was his
wont, boarded an electric railway car on the Laurel Line
to take the money to the colliery.  He was accompanied
by three guards and the money was in receptacles resem-
bling suit cases.  Six men, all of foreign speech, and who
turned out to be robbers, boarded the car at Scranton.
When the car, which contained a number of other pas-
sengers, reached a lonely spot some four or five miles
from its starting place, one of the six men who had
been sitting in the seat next the motorman's box in the
front of the car, arose, went out on the platform and
without warning shot the motorman and commanded
him to stop the car, which he did.  Immediately follow-
ing the shots directed at the motorman, the other bandits
in the car opened fire on the passengers, at the same
time ordering them to throw up their hands.  The pay-
master was wounded and Edward Murphy, a passenger,
was killed.  It was of his murder the defendants were
convicted.  The motorman recovered from his wounds.

As the car came to a standstill, it was observed that
there was a seven passenger touring automobile standing
in the road beside which the railway car had halted.
The conductor on the rear platform was immediately
covered by a revolver in the hand of another of the rob-
bers who was standing alongside of the road near the
automobile, which, in pursuance of the arrangement he
had made with his confederates, he had driven to this
spot.  The bandits on the car picked up the cases con-
taining the pay roll, left the car, entered the automobile
and drove off.  The automobile was subsequently found
in a woods in the mountains with some of the containers
of the pay roll in it.

None of the robbers was masked and they apparently
made no effort to conceal their faces.  The defendant
Burchanti was identified positively by the conductor as
the man who covered him from the roadside with a re-

volver and by a passer-by on the road who had unusual opportunities to observe him as the driver of the automobile. Eight passengers on the car identified Torti. Two of them testified that they saw him shoot and kill Murphy.

When news of the robbery and murder reached the state police, they immediately started on a hunt for the perpetrators of the crime. Their efforts resulted in the arrest several months later of Burchanti near Pittsburgh and of Torti in the village of Tiltonville, Ohio. When Burchanti was apprehended, he resisted arrest, and being armed, endeavored to shoot the officers; when Torti was discovered in the small Ohio town, he was in company with another of the bandits, and they opened fire on the state police. A revolver battle ensued between the two and their would-be captors, at the end of which, evidently seeing that arrest was inevitable, the one bandit killed himself with his own revolver, which Torti picked up and endeavored to use likewise, inflicting a serious wound on himself, from which, however, he recovered.

The defense was an alibi, the accused producing six witnesses who testified that the defendants were in Tiltonville and Yorkville, neighboring towns in Ohio, on the day the crime was committed. The defendants claim that they had left Mocanaqua without any preconcert so to do, Torti on July 23d, and Burchanti on July 24th, and, also without previous understanding, met in a small Ohio town some four hundred or more miles from the scene of the crime on the day it was committed and attended a funeral together.

To aid in establishing their alibi, they called as a witness a Dr. Lowthian, who testified that on July 30th in his office in Yorkville, Ohio, he had treated Burchanti professionally. While on the stand, Lowthian, to verify his recollection, produced a written memorandum of the dates of Burchanti's visits to him, which memorandum he said he had made at the time and testified that

this paper showed he had first treated him on July 28th and a second time on the day of the crime, July 30th. Two of the assignments of error which are pressed on our attention relate to incidents occurring during the examination of this witness. In the fifth assignment, complaint is made of the action of the court in impounding the paper which was used by Lowthian to refresh his recollection and which was not offered in evidence, the argument being that this cast an imputation of discreditability on the paper and the witness, greatly prejudicing the defense.

From the opinion of the court on defendants' motion for a new trial, we learn that, "After the defendants' counsel had declined to offer this paper in evidence, the trial judge asked to see the memorandum. Upon casually inspecting it he was impressed with the fact that the memorandum, which had been made with ink still apparently fresh, was a recent and clumsy fabrication. Without disclosing his suspicions to any one or saying anything that might militate against the defendants, he quietly directed 'that the paper be left with the clerk of the court.' This was done. It was then near the afternoon adjournment." The judge caused an investigation to be made of the paper and as a result "summoned the district attorney and directed him to take steps to arrest all the alibi witnesses before they returned to Ohio, but to make no arrests until after the case had gone to the jury and the jury had retired. These arrests were made as the [witnesses] were about to leave the City of Scranton for Ohio. The jury [trying the defendants] knew nothing of the arrests until after their verdict had been rendered and they had been discharged. Within two hours after the arrests of these witnesses, D. Lowthian and three of the alibi witnesses confessed their perjury." We see nothing in the circumstances of the trial judge directing the impounding of the paper which could injure the defendant; what was said and done at the time he ordered the paper to be turned

over to the clerk did not place any emphasis on the incident and it is extremely unlikely that it made any impression whatever upon the minds of the jurors. Certainly it could not have created an unfavorable attitude toward the defendants for the act itself was without any significance so far as appeared.

On the morning after the paper had been impounded and when it had been turned over by the clerk of the court to defendants' counsel the district attorney asked them if they were going to offer it in evidence and they replied that they were not. The district attorney then said "If you don't want the jury to know the truth of it, all right." Following this remark, a demand was made by defendants' counsel for the withdrawal of a juror, which motion was denied, the court saying to the jury that the remark of the district attorney would be stricken from the record and that they should disregard it. An exception was granted to the defendants, which forms the basis of the eighth assignment of error. While it would have been better for the district attorney not to have made the remark, we cannot conceive that his statement, in the light of the instructions of the court, prejudiced the case of the defendants; it was not, therefore, an abuse of the trial court's discretion (Com. v. Ezell, 212 Pa. 293, 296) to refuse the request for withdrawal of a juror. As was said by Mr. Justice WALLING in Com. v. Smith, 270 Pa. 583, 587, "What is excusable conduct in a prosecuting attorney depends somewhat upon the surroundings and atmosphere of the trial." See also Com. v. Bubnis, 197 Pa. 542, 550. Furthermore, the failure of the defendants to offer this paper in evidence under the circumstances here present was not an improper subject for comment by the district attorney any more than that in Com v. Weber, 167 Pa. 153.

Under the ninth assignment, complaint is made that the charge of the court was in part intended to answer arguments of counsel for the defense and that it was contradictory and misleading. We have carefully read

the parts of the charge embraced in this assignment to see whether these criticisms are merited and we think they are not. The whole charge impresses us as an impartial presentation of the case.

The assignments of error which have been adverted to are the ones which were urged on oral argument and in the printed briefs. We have not only considered them but all the others embraced in the record before us; our conclusion is that they are without merit. As required by the Act of February 15, 1870, P. L. 15, we have reviewed both the law as it was pronounced by the trial judge and the evidence submitted, to determine whether the ingredients necessary to constitute murder of the first degree have been proved to exist. Our unhesitating conclusion is that they have been.

The assignments of error are all overruled, the judgments are affirmed and the record remitted to the court below for the purposes of execution.