Commonwealth *v.* Schoenleber and Patterson, Appellant.

Argued March 11, 1929.

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*William T. Connor,* and with him *John R. K. Scott,* for appellant.

*Charles F. Kelley,* Assistant District Attorney, and with him *John H. Maurer,* Assistant District Attorney, and *John Monaghan,* District Attorney, for appellee.

OPINION BY TREXLER, J., April 10, 1929:

The defendant was charged in 37 indictments with bribery at common law and aiding and abetting the same, statutory bribery and extortion at common law and aiding and abetting the same (all in conjunction with Schoenleber), extortion from Peters, and extortion of sums of money from various saloon-keepers, with conspiracy to extort on twelve different occasions from Peters, conspiracy to extort money from saloon-keepers on twelve different occasions, and conspiracy to extort $12,195, the aggregate of the above sums.

The Commonwealth proved that sometime in February, 1928, defendant, Patterson, a member of the House of Representatives of the State, met Peters, who asked, "Are they going to collect?" and that Patterson replied, "As far as I know they are." A day or two later, Patterson met Peters and said to him, "They are going to collect $55 every two weeks." At the same time Peters was told that Joseph Ehrenreich, a young lawyer, would come and get the money from Peters and he was to collect from fourteen saloon-keepers who had their places of business in the 19th Ward of the City of Philadelphia. Peters collected approximately $12,195 in a period of six months in installments every two weeks of $55 from each saloon-keeper and turned the sum over to Ehrenreich. Ehrenreich's story is that Patterson instructed him to go to Peters and collect the money; turn over $1,240 to Charles Schoenleber, keep $300 for himself as a fee for his services, and retain the balance for him, Patterson. Ehrenreich collected the money, gave Schoenleber the sum agreed upon, put $300 in bank for himself and placed the balance either in the Textile National Bank or in the safe in his own office, holding it for the defendant, Patterson. He withdrew $251.44 of this money and bought for Patterson at his direction, two round trip tickets to the Republican National Convention at Kansas City, at which convention Pat-

terson was a delegate. This is the substance of what the Commonwealth proved at the trial.

There are 65 assignments of error. The appellant's counsel has divided them into seven groups.

1. Complaint is directed to the act of the court in sustaining the Commonwealth's challenges to two jurors on the ground that they were employees of the City of Philadelphia. We find no error in this act of the court. The defendant was not entitled to any particular juror or set of jurors: Com. v. Morgan, 280 Pa. 67. Obviously, there is some difference between the situation where the defendant challenges for cause and the court overrules the challenge and where the Commonwealth objects to the juror and he is excused. In the first instance, the defendant may be compelled to have a person whom the court should have disqualified, and he may be harmed thereby. In the second, when the court excuses a juror for physical reasons or interest or relationship or any such cause, he is not depriving the defendant of any right, for the defendant is not entitled to have any particular person on the jury; all that he can demand is that the twelve men chosen are qualified to sit upon the case. "The determination of the availability for service was largely within the discretion of the court below: Com. v. Henderson, 242 Pa. 372; Com. v. Eagen, 190 Pa. 10, and its action will not be reversed in the absence of palpable error (Com. v. Crossmire, 156 Pa. 304; Com. v. Gelfi, 282 Pa. 434) and only when injury appears: Com. v. Minney, 216 Pa. 149." Com. v. Bentley, 287 Pa. 539. In Com. v. Henderson, supra, a juror had some scruples against capital punishment, but asserted he could render a verdict according to the evidence and the trial judge excused him. The comment of the Supreme Court speaking through the present Chief Justice was, "Had the court permitted this juror to serve it would not have been error, but as just stated, such matters are peculiarly for the trial

judge, and a ruling thereon will not be reversed unless a palpable abuse of discretion appears; in the words of our Brother Brown, in Com. v. Sushinskie, 242 Pa. 406, 'The challenge of a juror for cause is addressed to the trial judge, and much weight must be given to his judgment in passing upon it. In exercising his discretion as to the fitness of a juror to serve, he has the juror before him; and much latitude must be left to him; and the weight to be given to the answers of a juror when examined on his voir dire is not to be determined exclusively by his words as we read them in the printed record. They are first to be weighed by the trial judge who sees and hears the juror, and in the exercise of a wide discretion, may conclude that he is not competent to enter the jury box for the purpose of rendering an impartial verdict, notwithstanding his words to the contrary.' " The reasons which prompted the trial judge to excuse the jurors in the present case are given in his opinion refusing a new trial, from which we quote, "One of the defendants on trial was a police officer, and a fellow-employe of the prospective jurors, though in different department of the city government. This relationship in view of the nature of the charges, threatened the free exercise of their judgments, either through possible bias or probable fear of the consequences of their verdict. It is true that they expressed their personal confidence in their ability to do their duty as fair and impartial jurors, and they might have been able to do so. They occupied a relation to one of the parties, however, which in itself challenged their complete freedom of action, and, depending upon the developments of the evidence, might well have seriously disturbed that personal indifference to the consequences of their verdict which is so essential to the proper performance of their duties by jurors."

2. It appears that Francis J. McKeown was called by the Commonwealth as a witness. In the course of

his testimony this witness made the startling assertion that in an interview with the prosecuting attorney, he had been importuned to make statements in conflict with the facts which would tend to fasten criminal responsibility upon the defendants then on trial. At the conclusion of the testimony, the court instructed the crier to take the jury to their room and in their absence, the court instituted an inquiry. Two witnesses who were present in the district attorney's office at the time the alleged statement was made and the stenographer who made notes of what was said, all testified that the statement attributed to the district attorney was not made. The court then sitting as committing magistrate, held the witness in bail to appear at court to answer the charge of perjury. The jury was then brought in and the case proceeded, the jury at no time during the trial being allowed to separate. The appellant claims that this was prejudicial to him in that it prevented him securing from the witnesses yet to be called a fair and true recital of what knowledge they possessed and that it also minimized the evidence given by McKeown to the jury and placed upon it the disapproval of the court and amounted to a practical direction to disregard it and discredit it. We do not attach the same effect to the action of the court. If any impressions were made by the act of the court upon the witnesses present, it was to induce them to tell the truth. The mere fact that the jurors were withdrawn from the room did not convey any intimation to them of what was going on. Appellant's counsel has indulged in some surmises as to what passed among the jurors after they were taken out, but that is mere guess work which does not help in the decision of the question. The committment of the witness in the presence of the jury would be of doubtful propriety, but is not error which is prejudicial where the committment is made without the knowledge of the jury. 26 R. C. L. 1020-1021.

Our court has decided in Com. v. Salawich, 28 Pa. Superior Ct. 330, that under the peculiar circumstances of that case, there was no error in the court calling to its bar a witness and binding him over to answer to the charge of perjury, even in the presence of the jury.

3. Joseph L. Ehrenreich called for the Commonwealth, was cross-examined by Mr. Scott, defendant's counsel. He was asked whether he had any conversation with the members of the district attorney's staff and whether or not a promise had been made to him. He testified that he made the statement to the district attorney, "I am going to get on that stand and I am going to tell the truth," and that the district attorney replied, "That is what you should do." The district attorney said, "Did I ever make any promises to you?" and he answered, "No." Mr. Scott then interjected the remark, "I thought that." The district attorney said, "You thought that? With a bootlegger spy sitting in the room." There was an instant objection taken to this remark and a request for the withdrawal of a juror which request was overruled. The court then addressed the jury: "Whatever the counsel for defendants, or the district attorney may have said, in anger, or any other way, in that colloquy, you will be careful to dismiss from your minds and pay no attention to. Sometimes in the heat of a battle people say things they should not say. Now, do not let it weigh for these defendants or against these defendants, one way or the other; dismiss it from your minds, and I instruct you particularly to do so."

What is excusable conduct for a prosecuting attorney depends somewhat on the surroundings and the atmosphere of the trial: Com. v. Torti, 283 Pa. 43. Evidently, the remark of the defendant's attorney was derisively made and was calculated to express doubt as to the truth of the narrative of the witness. The remark of the district attorney was out of place, but was not directed to the defendant, but to his at-

torney, intimating that he had a bootlegger spy in the audience to watch the actions of the Commonwealth's witnesses. The court cured any evil effect of the remark by the comment above set forth. Complaints such as these are in the first instance addressed to the trial court and only where its action discloses an abuse of discretion will a reversal be justified: Com. v. Rothensies, 256 Pa. 337; Com. v. Smith, 270 Pa. 583; Com. v. Pennington, 249 Pa. 536; Com. v. Touri, 295 Pa. 50. In the present case, both remarks were objectionable, but the district attorney was merely paying the appellant's attorney in his own coin. Nothing is gained by such uncalled for exchange of words, but we consider the incident was properly closed by the caution given by the trial judge and that no one was harmed.

4. Several assignments of error are. to the admission of testimony by one, Stephen Bungert. He stated that Peters told him that he was to pay $55 every two weeks for protection and that the protection to be furnished was police protection. What Peters said in the absence of Patterson to the contributing saloon-keepers about protection, it is claimed was hearsay and its admission error. Certainly in the proof of the crime of extortion, it is proper to prove the act of extortion. If done by someone at the direction of the defendant, it becomes his act. It is a fact in the case which is material to the charge, but which requires the connection to be established between the agent who did the actual extorting and the defendant. There must be a link in the chain of proof before the testimony is of value, but that link need not precede the proof of extortion, but is essential to the Commonwealth's contention. There was abundant evidence in the case, if believed, to connect Patterson with these acts.

The situation presented is in some respects like that in Com. v. Swift, 44 Pa. Superior Ct. 546. That

was a case of bribery and a witness was asked where the sum of money came from. In a conversation, the witness was allowed to testify that he got a certain sum of money from a Dr. Weber for the members of common council for their vote, although the defendant was not present when the occurrence took place. This was followed by evidence that the defendant received some of the money. In the present case, if Patterson received the money, it was competent for the witness to relate under what circumstances he, the witness, had procured it.

5. There were eighty-two points submitted to the court in behalf of Patterson. Fortunately but few require notice. The 70th and 73rd points read as follows: "No. 70. Unless the jury are satisfied that the witness, Peters, was a co-conspirator with the defendant, Patterson, they must render a verdict of not guilty as to the defendant, Patterson, on the charge of conspiracy if the testimony offered by the Commonwealth without the aid of testimony of Peters as to statements made or transactions which took place in the absence of the defendant, Patterson, is insufficient to enable them to find beyond a reasonable doubt that the defendant, Patterson, was guilty of conspiracy." "No. 73. In considering the charges of conspiracy made by the Commonwealth against the defendant, Patterson, the jury should give no consideration to any evidence given by the witness, Peters, and the witness, Ehrenreich, as to declarations made in the absence of the defendant, Patterson, unless the jury are satisfied beyond a reasonable doubt that Peters and Ehrenreich, or either of them, entered into a conspiracy with the defendant, Patterson." The trial judge refused to affirm the points and properly so. He has these comments to make on them, "The principle of law which it is contended these points announce is not clearly set forth in them. Assuming that they do sufficiently set forth the principle con-

tended for, however, it is evident that to have affirmed them would have been tantamount to a direction to the jury to disregard practically all the vitally necessary evidence in the case, and would have permitted a conviction only if the defendant was present at every stage· of the criminal transaction—a manifest absurdity, which would defeat the fundamental rule that, from the cooperative character of the independent acts of the different parties to a transaction, the existence of a conspiracy may be inferred: Ballantine v. Cummings, 220 Pa. 621; Com. v. Bartilson, 85 Pa. 482; Com. v. Sanderson, 40 Pa. Superior Ct. 416; Kelley v. People, 55 N. Y. 565; 12 C. J. 637, note 66C.''

The conversations, which were held between the saloon-keepers and Peters, who collected the bribe money as we·have already stated, were the oral communications by which the extortion was committed, and were, therefore, as the trial judge stated, ''overt acts in furtherance of the conspiracy, and the very gist of the offense.'' With a single exception, no conversations in the absence of the defendant were given in evidence, which named the defendant or referred to him in any way. The· exception was the testimony of Peters, that, when Ehrenreich first went to him to get the bribe money which had been collected, in order to deliver it to Captain Schoenleber, Ehrenreich told Peters, in effect, that he was there at the direction of the defendant, Patterson. The importance of this testimony vanishes in view of Ehrenreich's testimony that the defendant had sent him to Peters, and the defendant's own admission that he had brought Ehrenreich and Peters together.

6. Defendant's counsel argues that the defendant was convicted of more than one crime arising out of the same occurrence. A general verdict of guilty on an indictment containing various counts is often open to this objection, but, as in this case, if there be one

count to sustain the sentence, it is enough, Com. ex rel. Biscetti v. Leslie Warden, 290 Pa. 530; Com. v. Gayton, 69 Pa. Superior Ct. 513, but the sentence imposed should be limited to the punishment for the one most serious: Com. v. Ashe, 290 Pa. 534. We find no merit in the objection.

7. The last question submitted by the appellant is, was there error in failing to charge as to the effect to be given to cross-examination of witnesses called to establish good reputation.

The charge sufficiently referred to the value to be given to evidence of good reputation. There was an allusion made to some trouble about the Files' brewery and Patterson's name was mentioned in connection therewith, but there was nothing elicited to his detriment unless the mere mention of his name might be so considered. If the defendant's counsel wished the court to develop the fact that the testimony could not be made the basis of an inference unfavorable to Patterson, a request to that end should have been made.

All the assignments of error are overruled. The judgment is affirmed.