Commonwealth *v.* Wilkes, Appellant.

Submitted March 23, 1964. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Russell I. Jenkins,* for appellant.

*William J. Franks,* Assistant District Attorney, and *John R. Hoye,* District Attorney, for appellee.

OPINION BY MR. JUSTICE EAGEN, April 21, 1964:

The appellant-defendant, John Wilkes, Sr., was convicted by a jury of murder in the second degree. Following the denial of a motion for a new trial and imposition of sentence, this appeal was filed.

The Commonwealth's proof established the following:

The defendant, a married man, lived apart from his wife, in Layton Hill, a rural community in Fayette County, Pennsylvania. A young daughter resided with him, and on the date in question one Elizabeth Wingrove was visiting there overnight.

Around eleven o'clock p.m., Ronald Wilkes, a son of the defendant came to his father's residence seeking Elizabeth Wingrove, with whom both he and the defendant were carrying on an illegal relationship. Ronald knocked at the door several times, but the father refused to admit him, telling him that Elizabeth was not there, that he (the defendant) had a gun and that the son should go away.

The son kicked the door in, breaking the glass therein, in an attempt to enter. Immediately and as Ronald stood in the doorway, the defendant shot him in the left upper abdomen with a shotgun. He died within a few minutes.

The defendant, at trial, contended that the shooting was justifiable. He admitted knowing that his son was the intruder, and having intentionally fired the fatal shot. However, he testified that he heard more than one voice outside the door making threats to come in and "do him up." Also, that the son had abused him and made kindred threats previously. He said he

was in great fear of grave bodily harm when he fired the shot.

Two assignments of error are advanced in support of a new trial. They are without merit.

First, it is argued that the Commonwealth failed to refute defendant's testimony that the shooting was justifiable. The Commonwealth had no such burden.

The defendant had no right to kill solely to prevent damage to the property. While an owner may lawfully use reasonable force to protect his property, if he kills in order to protect it, he is guilty of felonious homicide: *Tiffany v. Commonwealth*, 121 Pa. 165, 15 A. 462 (1888). However, where a man is dangerously assaulted or feloniously attacked in his own dwelling house by one not a member of the household, he need not retreat, but may stand his ground and meet deadly force with deadly force to save his own life, or to protect himself from great bodily harm: *Commonwealth v. Fraser*, 369 Pa. 273, 85 A. 2d 126 (1952).

Assuming arguendo, that the facts related in defendant's testimony were sufficient to bring the killing within the last enunciated rule, it was still for the jury to determine if this version of the occurrence were true. The jury was not required to accept the defendant's story as given, even though it was uncontradicted. The jury had the right to believe all of his testimony, or a part of it, or none of it: *Commonwealth v. Tyrrell*, 405 Pa. 210, 174 A. 2d 852 (1961).

Moreover the intentional taking of human life is presumed unlawful and the burden of proving otherwise is upon the person setting up an excuse for so doing: *Commonwealth v. Nelson*, 294 Pa. 544, 144 A. 542 (1929). Further, self-defense is an affirmative defense and the burden of proving it is upon him who asserts it by the preponderance of the evidence: *Commonwealth v. Burns*, 367 Pa. 260, 80 A. 2d 746 (1951), and *Commonwealth v. Noble*, 371 Pa. 138, 88 A. 2d

760 (1952). This burden never shifts. The Commonwealth is under no obligation to prove that the defendant did not kill in self-defense. See, *Commonwealth v. Iacobino,* 319 Pa. 65, 178 A. 823 (1935), and *Commonwealth v. Updegrove,* 413 Pa. 599, 198 A. 2d 534 (1964). Whether or not, under all of the evidence, the defendant was justified in taking his son's life was strictly a jury question.

The final assignment of error questions the admissibility of certain evidence introduced at trial.

As noted before, the defendant and his wife were estranged and had separate residences. Two days after the killing involved, the wife visited her husband's house to secure clothing and other personal effects of the daughter who resided with the defendant. In the course of the search, she found five lurid and vulgar love letters written by the defendant to Elizabeth Wingrove, and answered by the latter on the back thereof. She delivered them to the mortician in charge, who subsequently turned them over to the police. They were admitted in evidence against the defendant for the limited purpose of showing the unholy relationship existing between the defendant, his son and Elizabeth Wingrove, indicating a possible motive for the killing. It is argued that this was prejudicial error because in effect it permitted the wife to testify or give evidence against her husband, contrary to the provisions of the Act of May 23, 1887, P. L. 158, §2(b), as amended, 19 P.S. §683. The case of *Commonwealth v. Fisher,* 221 Pa. 538, 70 A. 865 (1908), is cited in support of this contention. *Fisher* is clearly distinguishable. Therein personal letters addressed and sent to his wife by a defendant who was in jail were delivered by her to the district attorney. They were ruled inadmissible at trial as being in contravention of the Act of 1887. Herein, the letters were not addressed or sent to the wife; they were not a communication from one to the other;

their exposure breached no confidence between them; they were not her property; she had no right or interest therein. The circumstances here obtaining do not constitute the giving of testimony by the wife against the defendant. See, *Commonwealth v. Smith,* 270 Pa. 583, 113 A. 844 (1921).

With certain exceptions not relevant here, either spouse is prohibited from giving testimony in any form against the other: *Kerr v. Clements,* 148 Pa. Superior Ct. 378, 25 A. 2d 737 (1942). Confidential communications between them and facts which have come to their knowledge through the marital relationship cannot be divulged by either without the consent of the other. However, if knowledge thereof is not gained through the relationship and in the confidence which that relationship inspires, it is not privileged: *Seitz v. Seitz,* 170 Pa. 71, 32 A. 578 (1895). Knowledge of the existence of the letters involved did not rise through the marital relationship of the defendant and his wife. They came into being because of the lack of a proper relationship between them. The prohibition against the giving of testimony by one married party against the other is based upon consideration for preserving domestic peace, harmony and the sanctity of the marriage. Obviously, no such consideration precludes the exposure of the evidence involved.

Judgment affirmed.