Commonwealth *v.* Chilson, Appellant.

Submitted June 10, 1968. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.

*W. Marshall Dawsey,* for appellant.

*Maurice L. Epstein,* District Attorney, for Commonwealth, appellee.

OPINION BY HANNUM, J., September 12, 1968:

The appellant was arrested for assault and battery. The complainant was a Game Protector who had met appellant in a woodland near appellant's home and had asked appellant to produce his hunting license. Appellant then said he had misplaced it, whereupon

complainant took possession of the appellant's rabbit and shotgun and permitted appellant to return to his home. In a short time the complainant came to the door of the house carrying the rabbit and shotgun. The manner of his carrying the rabbit and gun was a matter of dispute, appellant and his witnesses asserting that complainant held them in his left hand while carrying a blackjack around his right wrist, complainant asserting that he carried one in each hand and had no blackjack. Complainant told appellant's father he wanted to speak to appellant, who then came to the door. Complainant testified that appellant hit him without warning and a fracas ensued. Appellant testified that complainant hit him across his temple with a blackjack without provocation. There is no doubt that a fight ensued and the only question of fact to be resolved was "Who was the aggressor"? The jury believed the complainant and convicted the defendant.

During the course of the trial appellant's counsel asked him: "Q. Now can you think of any reason why he would come to the door and that way and after you had exchanged a few words strike you over the head with a blackjack?" The objection to this question was properly sustained. However, later in his examination, the defendant was asked: "Q. Had you had any previous difficulty with Mr. Watson?" The objection to this question was also sustained.

At the conclusion of the defendant's case, his counsel made the following offer of proof: "I want to recall Mr. Max Chilson [the defendant's father] for the purpose of showing that there was bad blood between the defendant and the Commonwealth's witness and that the Commonwealth's witness had made a threat to 'get' the defendant." After a conference at side bar, the objection of the Commonwealth to this offer was sustained.

The jury found the appellant guilty of assault and battery. The defendant filed a motion for a new trial, asserting that the trial judge erred in making the above rulings. After his motion for new trial was dismissed, the appellant was sentenced to pay the costs and be committed to the Allegheny County Workhouse for a period of one year.

From this sentence an appeal was perfected to this Court by court-appointed counsel.

The issue before the jury was the question as to whether the defendant was the aggressor or whether he was defending himself from an unprovoked attack by the complainant. The defendant admits that the jury accepted the testimony of the complainant but argues that, had the evidence proposed to be offered been admitted, the jury may very well have found that the complainant was the aggressor.

We feel that this position was well taken. In 1 A.L.R. 3d, page 571, there is an annotation on the subject "Admissibility of evidence as to other's character or reputation for turbulence on question of self-defense by one charged with assault or homicide." At page 574 of the annotation it is stated: "Accordingly, where the defendant in a prosecution for murder or manslaughter denies the killing, or asserts that it was not intentional, the character of the deceased is not an element to be considered by the jury in determining the guilt or innocence of the defendant. However, in trials for homicide or for assault in which the defendant admits the killing or the assault and claims to have acted in self-defense, evidence of the turbulent and dangerous character or reputation of the deceased or the victim of the assault is relevant, since the law recognizes the well-established fact in human experience that the known reputation or character of an assailant as to violence and turbulence has a very ma-

terial bearing on the degree and nature of the apprehension of danger on the part of a person assaulted."

This statement of the law is supported by the Pennsylvania cases. In *Judson E. Tiffany v. The Commonwealth*, 121 Pa. 165, 6 Am. St. Rep. 775, 15 A. 462 (1888), an offer of proof was made and refused in the following language: "In the prisoner's behalf, J. K. Aldrich was called: Q. Are you acquainted with Lafayette Crandall? A. Yes, sir. Q. Do you know what his general character and reputation is, as to being quarrelsome,—from the speech of the people? Objected to.

"Mr. McCollum: We offer to prove by this witness and twenty-five others that Lafayette Crandall has a notoriously bad reputation as a quarrelsome, bad-tempered, dangerous man, and that all this was known to Judson Tiffany on July 15, 1886, at the time of the shooting. Objected to, that it is irrelevant and immaterial.

"By the court: Objection sustained and offer refused."

The Supreme Court ruled on this objection, at page 181, as follows: "The subject of complaint in the sixth specification is the rejection of the offer to prove by the witness then on the stand, and twenty-five other witnesses, 'That Lafayette Crandall has a notoriously bad reputation, as to being a quarrelsome, bad-tempered, dangerous man, and that all this was known to Judson Tiffany on the 15th July, 1886, at the time of the shooting.' For obvious reasons that evidence should have been received. According to defendant's own evidence, as we have seen, he was assaulted by both Hocum and Crandall, and he had as much right to prove the bad reputation of the latter as a violent and dangerous man, as he would have had to prove the reputation of Hocum. It had a direct bearing on the question of justifiable self-defense."

In *Commonwealth v. Wilkes*, 414 Pa. 246, 199 A. 2d 411 (1964), although there is no discussion of the legal question involved, it was stated in the opinion of the Court, written by Mr. Justice EAGEN: "The defendant, at trial, contended that the shooting was justifiable. He admitted knowing that his son was the intruder, and having intentionally fired the fatal shot. However, he testified that he heard more than one voice outside the door making threats to come in and 'do him up.' Also, that the son had abused him and made kindred threats previously. He said he was in great fear of grave bodily harm when he fired the shot." It follows that such evidence had been admitted.

See also *Commonwealth v. J. M. Ribert*, 144 Pa. 413, 22 A. 1031 (1891), where it was said: "The second and third assignments are to the refusal to allow the prisoner to show that by special contract with his employers he was entitled to the exclusive possession of the room where the assault took place, and particularly that the prosecutor, Osborne, was not to enter it. Such an arrangement was unusual, perhaps improbable, but the appellant had a right to give it in evidence, and ask the jury to believe it; and, if they did so, it would put the occurrence in a different light, perhaps even to the extent of justifying the prisoner in attempting to eject Osborne forcibly. The question for the jury then would be, not whether this was a wanton and unprovoked attack, but whether more violence was used than the occasion justified. The evidence, therefore, was material to the appellant's case, and should have been admitted."

We feel that the above language is particularly applicable to the present case. The testimony which was offered may have been unusual and perhaps improbable, but the appellant had the right to give it in evidence and ask the jury to believe it. His defense was

self-defense and such testimony had a direct bearing on that question.

Judgment of sentence is reversed and a new trial is awarded.