Commonwealth ex rel. Cabey, Appellant, *v.* Rundle.

Argued April 29, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Sara Duffy,* for appellant.

Welsh S. White, Assistant District Attorney, with him Michael J. Rotko, Assistant District Attorney, Richard A. Sprague, First Assistant District Attorney, and Arlen Specter, District Attorney, for appellee.

OPINION BY MR. JUSTICE EAGEN, November 27, 1968:

Appellant was indicted on charges of aggravated robbery, burglary, conspiracy, and committing a crime of violence when armed. Appellant's first two trials resulted in hung juries. At the third trial, appellant's gun was admitted into evidence over objection that it was the product of an unlawful search and seizure.[1] Appellant was found guilty on all charges, and the Superior Court affirmed. This Court denied allocatur and the Supreme Court of the United States denied certiorari. 380 U.S. 926, 85 S. Ct. 902 (1965). Appellant's subsequent petition for a writ of habeas corpus was dismissed, the Superior Court affirmed, but we granted allocatur and remanded to the trial court for consideration of appellant's claim that evidence was admitted in violation of the rule of Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684 (1961). After full hearing, Judge SPAETH denied appellant's petition for a writ of habeas corpus. The Superior Court again affirmed and we granted allocatur.

Appellant was arrested on April 13, 1961, the day after the commission of the offenses charged. The police searched appellant and took from him, among other things, a key ring. Because of the illness of appellant's wife, appellant had been staying with his wife at the home of his in-laws. As a result, appellant had leased from his employer two garages to be used for storage. The key to the garages was on appellant's key ring.

---

[1] A motion to suppress the gun was granted at the first trial. The gun was admitted at the second trial because of failure to file a pretrial motion to suppress.

The trial court found as a fact that the rental agreement was only between appellant and his employer. The court further found that the only key to the garages was the one on appellant's key ring. It also found, however, that the garages were used to store property belonging both to appellant and his wife, and that appellant had no intention of excluding his wife from the garages or from the property therein.

After searching appellant's automobile, the police gave the key ring, including the garage key, to appellant's wife. Subsequently, a different detective went to the home of appellant's in-laws and asked his wife if appellant had a gun. She replied that she did not know, but that if he did it would not be at her parent's home. When asked where appellant's and her belongings were, she told the detective about the garage and gave him permission to search there, offering the key. The detective asked appellant's wife if a search warrant was necessary and she replied that it was not.

Appellant now claims that the search of the garage and the seizure of the gun without a search warrant violated his rights under the Fourth Amendment to the Constitution of the United States. The Commonwealth maintains that the uncoerced, knowing and intelligent consent of appellant's wife immunizes the search and seizure from constitutional attack.

From the very start of this discussion, we wish to emphasize vigorously that an individual's constitutionally ordained rights are personal to him, and cannot be forfeited or waived by any other person, acting without his authority or consent. Mindful of that premise, we meet the jugular issue in this appeal: Was this search and seizure a direct result of an unconstitutional waiver of the appellant's rights by his wife?

The trial court sustained the constitutionality of the search by focusing upon the independent right of

the wife to exercise control over the garages, and her incidental right to delegate intelligently that right to the police.

We hold that the search and seizure were constitutionally permissible. In so deciding, we comport with the realities of the situation, realizing that only by the use of a legal fiction could we find a waiver under the facts of this case.

In admitting the police to the garages, the appellant's wife did not claim authority from the appellant to admit them; she acted not as a servant, but as a master, empowered with all incidents of control over property,—the right to admit and the power to deny entrance. She offered the key to the garages to the police officer; the key, not just a symbolic expression of permission to enter, but the actual power to enter. And the bestowal of this means of access was not reluctant. It came not in response to a command, or even a request. It was offered without condition, — even with a statement that a search warrant was not necessary.

The Fourth Amendment's protection of privacy is geared more toward people than property. Cf. *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507 (1967). Property has no rights, no privacy. Persons do. So, in deciding whether the appellant's constitutional rights were impinged upon, we must consider the gravity of the invasion upon *his* privacy. What was the nature of the appellant's privacy here? He had the power of control over the premises, and indeed, it was a pervasive power, a broad power. But it was not absolute. For in the garage was furniture which belonged jointly to the appellant and his wife. Although the lease agreement did not mention the appellant's wife, the facts reveal that the appellant "had no intention of excluding his wife either from the garages or from the

goods and furniture stored there." Hence, the appellant's privacy gave him the right to exclude vast numbers, perhaps the whole world,—all except his wife. But she too had rights and powers with respect to the garages; she could permit her friends, her neighbors, and her family to go there. And she could also allow the police to enter and search it.

The Supreme Court of the United States has considered this problem in *Stoner v. California*, 376 U.S. 483, 84 S. Ct. 889 (1964), and *Chapman v. United States*, 365 U.S. 610, 81 S. Ct. 776 (1961). We think that the result we reach is consonant with both of those decisions.

*Stoner* invalidates, as violative of the Fourth Amendment, a search of a defendant's hotel room, initiated with the consent of a hotel clerk. The basis of the *Stoner* decision was that the police had no reasonable basis for believing that the clerk was really authorized by the defendant to consent to the search.

The approach of *Chapman v. United States*, supra, differs from that of *Stoner*. In *Chapman*, the police entered a leased dwelling without a warrant but with the consent of the defendant's landlord. Once within the house, they seized 1300 gallons of mash. The Government did not maintain that the search and seizure met Fourth Amendment approval because of an implied consent or waiver by the accused-tenant. Obviously there was none. Rather it argued that the search and seizure were valid because of an independent right in the landlord to enter the premises when he had good reason to suspect that the demised dwelling was being used for unlawful purposes.

The United States Supreme Court rejected the argument of the Government because it failed to establish the landlord's right under Georgia law to enter forcibly the leased premises "to view waste." The Court did

not say that a search and seizure could never survive constitutional objection merely because it was authorized by a person who was not the defendant, but who had an independent right to exercise control over the premises. The Court did say that the particular landlord in the particular fact setting had no independent right to enter the demised premises, absent an express covenant giving him such a right.

The test of substantial control of the premises by a person other than the accused has sustained searches and seizures in *Stein v. United States,* 166 F. 2d 851 (9th Cir.), cert. denied, 334 U.S. 844, 68 S. Ct. 1512 (1948); *Woodard v. United States,* 254 F. 2d 312 (D.C. Cir.), cert. denied, 357 U.S. 930, 78 S. Ct. 1375 (1958); and *Roberts v. United States,* 332 F. 2d 892 (8th Cir. 1964), cert. denied, 380 U.S. 980, 85 S. Ct. 1344 (1965). In line with the reasoning of these decisions, we conclude that the appellant's wife had sufficient control over the premises involved to grant in her own right a valid consent to the search.

Order affirmed.

Mr. Justice MUSMANNO did not participate in the decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent from the majority's determination that appellant's gun was properly used as evidence against him.

At the outset, I have grave doubts whether this evidence could properly be used under state law. To begin with, appellant was tried three times, the first two trials resulting in hung juries. At the first trial, appellant's motion to suppress the gun was *granted* and the Commonwealth took no appeal. This having been done, I believe that the Commonwealth could no longer utilize this evidence.

Under P. R. Crim. P. 2001(g), "the court of a prosecution county shall enforce any order by a court of a seizure county," except that there remains discretion to suppress evidence previously held admissible. I see no reason why this should not apply where the suppression court and the trial court are in the same county. However, appellant was tried before Rule 2001(g) became effective, and thus he cannot claim the benefit of that rule. Nonetheless, I believe that Rule 2001(g) made no change in the pre-existing law, and as a result I believe that the first determination of suppression should be binding.

I believe decisions from the analogous confession area support this result. Thus, in *Commonwealth v. Warfield*, 418 Pa. 301, 211 A. 2d 452 (1965), "we impliedly held . . . that the trial judge cannot reverse on the same record at trial the decision made after the pretrial suppression hearing. . . ." *Commonwealth v. Washington*, 428 Pa. 131, 133, n. 2, 236 A. 2d 772, 773 n. 2 (1968). Although *Warfield* was decided after appellant's trial, it was decided under circumstances equivalent to those which prevailed when appellant was tried, in that rules of criminal procedure governing the problem had not yet been adopted. Thus it is in effect a decision which forms part of the "common law" of state procedure, and its reasoning is persuasive in our case.

Although the Court in *Warfield* did not need to reach the issue now before us, the statement in *Washington* is based on the *Warfield* court's apparently favorable reference to *United States v. Wheeler*, 256 F. 2d 745, 747-48, cert. den. 358 U.S. 873, 79 S. Ct. 111 (1958), where the Court stated that a judge should not be placed in a position where he might "overrule a decision by another judge of the same court in the same case." Although *Wheeler* applies on its facts to a

rehearing situation, this Court's citation of it in *Warfield*, and the subsequent statement in *Washington*, indicates that its rationale applies more broadly. This is logical, for the considerations are the same whether there is a rehearing problem, a previous pretrial hearing, or a prior suppression determination at trial. Only in a newly-discovered evidence situation might there be any question. Otherwise the determination will in effect be made "on the same record," see *Washington*, supra. I do not think that it is relevant that technically a new record will be made, since it will consist of the same evidence as the prior record, absent a valid newly-discovered evidence claim. If a party could have used evidence before but did not, I do not believe that he can be heard to claim a second chance.

Once the determination of suppression was made, that decision should be regarded as final as a trial matter. The Commonwealth's proper remedy is an appeal from the suppression order, which it is allowed to take. See *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A. 2d 304 (1963), cert. den. 375 U.S. 910, 84 S. Ct. 204 (1963). The fact that the trial on the merits resulted in a hung jury is irrelevant to allowing the Commonwealth to once again raise the suppression issue at a subsequent trial, since the determination that the evidence was to be suppressed was separate from the failure of the jury to reach a decision.

Furthermore, because the consent was given by appellant's wife, I believe that as a matter of state evidentiary law it is questionable whether the evidence which was found as a result of the search may be used against appellant. Pennsylvania follows the rule that, with exceptions not here relevant, a spouse may not give testimony in any form against the other spouse. E.g. *Commonwealth v. Wilkes*, 414 Pa. 246, 199 A. 2d 411 (1964). The rationale of the rule is to preserve

marital peace and tranquility. In *Wilkes,* the wife found lurid love letters written by her husband to another woman, and these letters were made available to the police by the wife. The Court said this situation fell without the general rule because the existence of the letters came about because defendant and his wife did not have a proper marital relationship to begin with, and thus the rationale for the rule—protecting the marital relationship—disappeared.

Here there is absolutely no indication of marital discord at the time of the event in question. Thus under *Wilkes* and prior cases it seems clear that the wife herself could not offer evidence of the gun. If she could not offer that evidence directly, I do not think it is permissible for her to aid the police in finding the evidence "on their own." In either event, the threat of marital discord is equally great.

Although I believe this case should be decided as a question of state law, since the majority has reached the federal Constitutional ground, I believe it is necessary to dissent from its Constitutional determination. In my view, the most logical reading of the decisions of the Supreme Court of the United States compels us to reverse appellant's conviction and grant him a new trial.

The majority agrees that appellant's wife could not "waive" his right to be free from warrantless searches, but reasons that there was no "waiver" in this case because the wife had an independent right to exercise control over the garages. This verbal sleight of hand completely misses the point of the Fourth Amendment protection which appellant claims. The majority concedes that only by use of a legal fiction could we find a waiver in this case. I find it equally fictitious to say that because appellant's wife was willing to let police enter the garages, appellant could no

longer argue that his constitutional rights had been violated when evidence obtained during the search was used *against him* at *his* trial. Appellant, not his wife, was on trial here. Certainly evidence found in the garages could be used at a trial against appellant's wife, but I do not believe that appellant's constitutional rights could be lost at the whim of another.*

Despite the majority's insistence to the contrary, I am forced to conclude that it has made appellant's constitutional rights subservient to his wife's property rights. This is despite the command of the Supreme Court of the United States that "the Fourth Amendment protects people, not places." *Katz v. United States,* 389 U.S. 347, 351, 88 S. Ct. 507, 511 (1967). *Katz* overruled the "trespass" test for determining the validity of electronic evesdropping. It had been held that unless a listening device penetrated a wall, as opposed to merely being attached to a wall, a Fourth Amendment claim was barred. Under the Court's developing emphasis on protecting the rights of individuals, not property, the old rule became untenable.

---

* Even if the wife could validly consent to a search for evidence that could be used against her husband, I assume that for that consent to be valid, she would need to have been informed that (1) absent her consent, the police would need a warrant, and (2) that evidence found therein could be used against her husband. There is no doubt that for the wife to waive her own freedom from a warrantless search would require "an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938). I believe, despite the majority's protestations to the contrary, that a consent-search must be based on a doctrine of waiver, see *Stoner v. California,* 376 U.S. 483, 489, 84 S. Ct. 889, 893 (1964) ; *Commonwealth v. Gockley,* 411 Pa. 437, 446, 192 A. 2d 693, 698 (1963), and even if a wife could waive her husband's rights by consenting to a search, that waiver must be knowing and intelligently made. This would have to be affirmatively shown on the record, and I find no such showing here.

*Katz* indicates that the proper focus in this case is whether the search was unconstitutionally intrusive *as to appellant,* not as to the building involved. Thus the fact that appellant's wife could legally enter the building or admit others does not mean that the police could enter and search for *appellant's* property without obtaining a search warrant. The majority relies on factors such as appellant's wife's ownership in furniture in the garages. I find it rather odd for appellant's right to be free from a warrantless search to depend on whether his wife's ottoman was on the premises. Under the majority's theory of "rights and powers" I have to assume that if appellant and his wife held property as tenants by the entireties, she could consent to a search against her husband, but if the property was held in his name alone, she could not. I cannot see how the majority can insist that it is not hinging appellant's constitutional rights to his wife's property rights while emphasizing that it is holding the search valid because the wife had furniture on the premises. This is exactly the kind of distinction that *Katz* held to be unacceptable.

In my view, the majority has misread the import of *Stoner v. California,* 376 U.S. 483, 84 S. Ct. 889 (1964) and *Chapman v. United States,* 365 U.S. 610, 81 S. Ct. 776 (1961). The majority distinguishes *Stoner* by saying that its "basis . . . was that the police had no reasonable basis for believing that the clerk was really authorized by the defendant to consent to the search." Of course the police in this case had no more basis to believe that appellant *authorized* his wife to consent to the search; rather clearly he did not. The fact that the wife had an interest in the property in no way indicates that she was permitted to let in *the police* to search for evidence which was to be used against appellant.

Even more important, *Stoner* explicitly rejects the arguments made by the majority that simply because the wife had *certain* rights in the premises, *she* was enabled to allow a police search and no question of waiver was thus presented. The Court in *Stoner* stated: "It is important to bear in mind that it was *petitioner's constitutional right* which was at stake here, and not the night clerk's nor the hotel's. It was a right, therefore, which *only the petitioner could waive* by word or deed, either directly or through an agent." 376 U.S. at 489, 84 S. Ct. at 893 (emphasis added). It could not be clearer that the Supreme Court regarded the question of consent by a third party as one of waiver, and that the Court rejected the theory that a waiver could be achieved by an unauthorized person, even if that person had some rights in the premises. The Court went on to explicitly reject the notion that the right of a person to enter upon certain premises carried with it the right to permit *police* to also so enter, stating that "when a person engages a hotel room he undoubtedly gives 'implied or express permission' to 'such persons as maids, janitors or repairmen' to enter his room 'in the performance of their duties.' . . . But the conduct of the night clerk and the police in the present case was of an entirely different order." *Id.*, quoting *United States v. Jeffers*, 342 U.S. 48, 72 S. Ct. 93 (1951).

*Stoner* reaffirmed and elaborated on *Chapman*, which I believe the majority also has misread. The majority states that *Chapman* was based on the government's failure "to establish the landlord's right under Georgia law to enter. . . ." This is not entirely accurate. Although the Court did note that it could find no Georgia cases to support the government's position, it also had to meet the government's argument that the landlord had a general common law right to

enter. To this contention, the Court replied, inter alia, that to allow this argument to prevail would leave tenants' Fourth Amendment rights at the discretion of their landlords. The Court explicitly refused to utilize property law distinctions to decide the Constitutional question, a theory which is consistent with its subsequent decisions in *Stoner* and *Katz*.

There is no more reason to put an individual's constitutional rights at the mercy of his wife than there is to allow his landlord to decide whether he will receive Fourth Amendment protection. Certainly the mere existence of a marriage does not create an agency agreement under which a spouse may consent to a search and seizure of the other spouse's property. The folly of permitting a husband's rights to turn on whether a wife has an independent right to enter the property is emphasized by the case in which the wife is working hand-in-glove with the police because she is angry at her husband. See *Stein v. United States,* 166 F. 2d 851 (9th Cir. 1948), cert. denied, 334 U.S. 844, 68 S. Ct. 1512 (1948). The correct focus in determining appellant's rights can only be on appellant himself, and the proper inquiry is whether he had "a reasonable expectation of freedom from governmental intrusion." *Mancusi v. DeForte,* 392 U.S. 364, 368, 88 S. Ct. 2120, 2123-24 (1968). Appellant certainly could reasonably have expected his wife to enter the garages, but this in no way indicates and is not even relevant to whether he reasonably expected to be free from police entry.

The Commonwealth argues here that the police were entitled to search without a warrant because they acted "reasonably." However the trend of decisions of the Supreme Court of the United States indicates that the Fourth Amendment must be considered "a pervasive rule requiring a warrant, subject only to narrow and

specific exceptions." Amsterdam, Segal and Miller, Trial Manual for the Defense of Criminal Cases, §229 at 2-166 (1967); see, e.g., *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 1879 (1968); *Preston v. United States*, 376 U.S. 364, 367, 84 S. Ct. 881, 883 (1964); *United States v. Jeffers*, 342 U.S. 48, 52, 72 S. Ct. 93, 95 (1951); *Commonwealth v. Cockfield*, 431 Pa. 639, 246 A. 2d 381 (1968). In *Terry*, the Court explicitly stated that "the police must, *whenever practicable*, obtain advance judicial approval of searches and seizures, through the warrant procedure, . . . or that in most instances failure to comply with the warrant requirement can only be excused by exigent circumstances. . . ." 392 U.S. at 20, 88 S. Ct. at 1879 (emphasis added.) In the analogous *Stoner* and *Chapman* cases, supra, the Court clearly held that a warrant was necessary. There is no greater indication in this case that there were exigent circumstances or that obtaining a warrant was not practical. Saying that the officers acted "reasonably" in entering without a warrant upon obtaining the consent of the wife of appellant, but not appellant himself, assumes the answer.

In conclusion then I believe that the Commonwealth should have been barred from introducing the evidence in question because of the unappealed-from prior determination of suppression, the state law bar preventing a wife from testifying against her husband, and because the consent of appellant's wife was insufficient to permit a warrantless search for appellant's property, and thus I dissent.

Mr. Justice O'BRIEN joins in this dissent.