## Commonwealth *v.* Arnold, Appellant.

Argued November 12, 1969. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*Irving M. Green,* with him *Louis H. Ceraso,* for appellant.

*Gilfert M. Mihalich,* Assistant District Attorney, with him *Joseph M. Loughran,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, April 28, 1970:
Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Larry Arnold was tried before a jury on a general charge of murder, convicted of voluntary manslaughter, and sentenced to serve six to twelve years. The only issues raised on this direct appeal concern the propriety of admitting into evidence certain pieces of physical evidence—two .32 caliber revolvers—and the constitutionality of certain incriminating statements. Since I believe that the conviction must be reversed because the two revolvers were unconstitutionally seized I will not deal with the more problematical confession issue.

On May 23, 1966, police officers in Westmoreland County discovered the bullet riddled body of one David Pedder. After a preliminary investigation by the Pennsylvania State Police an order was issued to pick up for questioning the victim's wife, Violet Pedder, and an unknown male companion. Since Violet Pedder was then known to be living in York County, two State Police officers stationed in that area proceeded to her home. Upon their arrival they found Violet Pedder, her child and her stepfather, Mr. Hutton, at home.

The officers asked Violet Pedder several questions, among them whether anyone was then living with her. She told the officers that Arnold was living with her and gave them a description of him and his car. The description matched the one sent out from Westmoreland County. The troopers also inquired about the guns, but neither Violet nor her stepfather professed any knowledge of the weapons. The officers then took

Violet Pedder into custody and departed, leaving the child and the stepfather behind.

After leaving the house and traveling two or three miles, the officers were passed by Arnold driving in the opposite direction toward the Pedder residence. The officers turned around and gave chase, finally catching Arnold about three-tenths of a mile from the house, on a long private drive that led from the house to the public highway. Arnold was frisked and placed in the police vehicle. At that moment Mr. Hutton approached, driving from the house. He related that shortly after the officers left he noticed two .32 caliber revolvers and a box of ammunition in the bedroom which Arnold and his daughter shared and that he was on his way to notify the officers of his discovery when he happened upon them in the driveway. Mr. Hutton further stated that the guns were his but that he had given them to Arnold several months before with the understanding that Arnold would have them repaired and that each of them would keep one of the repaired weapons. Since the teletype report had mentioned that David Pedder had been killed with a .32 caliber weapon the troopers expressed interest in the discovery. The entire cast of characters then returned to the Pedder residence. While Violet Pedder and Arnold remained in the police car with one of the officers, the other officer and Mr. Hutton went inside the house and retrieved the guns, which were lying inside an army cap on the bed in the Pedder-Arnold bedroom. The officer took the guns and then returned with Violet Pedder and Arnold to the police station. One of the two guns was found to have been the murder weapon.

The guns were introduced into evidence at Arnold's trial over the objection of his counsel. Since I believe that they were seized in violation of Arnold's Fourth Amendment rights, it is my view that the conviction must be reversed and a new trial granted.

It is clear beyond doubt that ". . . searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967). The Commonwealth argues, however, that the search in the instant case fits within the exception which permits an otherwise impermissible search to be made with the consent of the person whose rights are violated, or with the consent of a third person who has either the authority to waive the rights of the person against whom the search is directed, *see, e.g., Katz v. United States,* 389 U.S. 347, 88 S. Ct. 507 (1967), or who has an ownership interest in the property sufficient to authorize a search thereof, *see, e.g., Frazier v. Cupp,* 394 U.S. 731, 89 S. Ct. 1420 (1969). I cannot agree, believing that Mr. Hutton's "consent" could not justify the search made in this case.

In the first place, it is clear that Mr. Hutton did not have a sufficient independent interest in the premises to permit the search. Every case which has upheld the validity of third party consent on the basis of the third party's independent property interest has been careful to note that the party whose consent was found effective had *at least* an equal right in and joint control over the searched premises. *See, e.g., Friedman v. United States,* 381 F. 2d 155 (8th Cir. 1967); *United States v. Airdo,* 380 F. 2d 103 (7th Cir. 1967); *Roberts v. United States,* 332 F. 2d 892 (8th Cir. 1964); *United States v. Sferas,* 210 F. 2d 69 (7th Cir.), *cert. denied,* 347 U.S. 935, 74 S. Ct. 630 (1954); *People v. Rodriquez,* 223 N.E. 2d 414 (Ill. Ct. App. 1967); *Jenkins v. State,* 230 A. 2d 262 (Del. Sup. Ct. 1967). Mr. Hutton neither owned nor lived at the Pedder residence, but was only an occasional visitor who happened to have access to the premises because he was on the

scene when his stepdaughter was arrested. It is clear that Mr. Hutton's interest in the Pedder residence was insufficient to give him an independent right to permit the search.

Additionally, there are cases dealing with third party consent which hold that even where the consenting party has a lesser right of occupancy or possession, insufficient in itself to permit a search on consent, the search may be permissible if it is found that the absent party has made the consenting party his agent for consent. However, ". . . the rights protected by the Fourth Amendment are not to be eroded by strained applications of the law of agency or by unrealistic doctrines of 'apparent authority'." *Stoner v. California,* 376 U.S. 483, 488, 84 S. Ct. 889, 892 (1964). See, e.g., *United States ex rel. Cabey v. Mazurkiewicz,* Misc. No. 69-27 (E.D. Pa., filed June 30, 1969), which granted habeas corpus relief to a relator whose conviction had been affirmed by this Court in *Commonwealth ex rel. Cabey v. Rundle,* 432 Pa. 466, 248 A. 2d 197 (1968) (Mr. Justice ROBERTS filing a dissenting opinion in which Mr. Justice O'BRIEN joined). *See, also, Teasley v. United States,* 292 F. 2d 460 (9th Cir. 1961). But since both Violet Pedder and Arnold were present and available at the time of the search, this approach is totally inapplicable to the facts of this case.*

I dissent.

Mr. Justice O'BRIEN joins in this opinion.

---

* Because I have concluded that under the traditional standards there could be no effective third party consent in the instant case, I have found it unnecessary to consider the proposition that, since Fourth Amendment rights are increasingly being recognized as personal and not property related, once an investigation has focused on an individual, only that person can effectively waive his Fourth Amendment protections. *People v. Smith,* 172 N.W. 2d 902 (Mich. Ct. App. 1969). See also *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S. Ct. 1642 (1967) ; *Katz v. United States,* 389 U.S. 347, 88 S. Ct. 507 (1967).